2001 WY 110

Lee EVANS and Linda Evans, Appellants (Plaintiffs),

v.

FARMERS INSURANCE EXCHANGE, a California corporation, Appellee (Defendant).

No. 00–28.

Supreme Court of Wyoming.

Nov. 9, 2001.

Representing Appellants: Dennis W. Lancaster of Lancaster Law Offices, P.C., Evanston, WY.

Representing Appellee: George E. Powers, Jr. of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, WY.

Before LEHMAN, C.J., and GOLDEN, HILL and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1] Lee and Linda Evans suffered emotional distress as a result of witnessing the impact and immediate aftermath of an automobile accident in which their son was seriously injured as the result of a third party's negligence. When the third party's insurance coverage was exhausted, the Evans couple looked to the underinsured motorist (UIM) coverage they held through Farmers on the vehicle they had been driving at the time of witnessing their son's injuries. Farmers agreed that the Evanses had suf-

fered trauma but refused to cover purely emotional or psychic injury unaccompanied by any kind of physical harm. Subsequently, the question of whether "bodily injury" as used in the policy affording Lee and Linda Evans UIM coverage may be read so as to embrace emotional distress was certified to this court. Under the specific terms of the insurance policy involved in this case, we answer in the affirmative.

## ISSUE

[¶ 2] The parties pose the following question:

> Where an insured has sustained emotional distress as a result of witnessing the injury of another family member, are these emotional distress claims covered for purposes of establishing a claim for recovery of underinsured motorist coverage under the terms of the policy issued by Farmers Insurance Exchange (Policy No. 76–14686–97–07)?

## FACTS

[¶ 3] The parties have stipulated to all of the material facts. Lee and Linda Evans are husband and wife and the natural parents of Cody Evans. About 7:25 p.m. on August 9, 1997, Lee and Linda were driving their 1997 Ford Expedition, followed closely by their son Cody, who was driving a 1990 Ford Ranger pickup. Due solely to the negligence of Bradley Vallee, Vallee's vehicle collided with Cody's pickup, causing serious bodily injury to Cody, including a broken collarbone, broken femur, cuts, and abrasions.

[¶ 4] Lee and Linda Evans were not involved in the collision, nor did their Expedition sustain any impact or damage as a result. They did, however, observe the accident and quickly turned back to witness the immediate aftermath of the accident, including the serious bodily injuries sustained by their son Cody. Although Lee and Linda sustained no physical injury, Farmers agrees that they sustained emotional distress as a direct result of observing the serious injuries sustained by Cody.

[¶ 5] Mr. Vallee was insured by Allstate Indemnity Company. His policy was subject to limits of $25,000 per person and $50,000 per occurrence. Allstate settled the claims against Vallee through payments to the Evans family and others not party to the instant action, exhausting the policy limits. Farmers Insurance Exchange consented to the settlement.

[¶ 6] Through Farmers Insurance Exchange, Linda Evans had insured the Ford Expedition in which she and her husband were riding at the time of their son's accident. That insurance contract, policy number 76–14686–97–07, became effective July 16, 1997, and remained in full force and effect at the time of the collision. Subject to the stated terms of the policy, Farmers agreed to provide underinsured motorist coverage (UIM) to Lee and Linda Evans.

[¶ 7] Lee Evans has made a claim under Farmers UIM coverage for $20,000 as compensation for the emotional damage he suffered as a result of witnessing his son's accident and its immediate aftermath. Linda Evans has asserted a similar claim seeking emotional distress damages in the amount of $47,000. Believing that the emotional distress suffered by the Evanses falls outside the scope of "bodily injury" as described in the UIM coverage, Farmers has denied the emotional distress claims. However, to the extent that Lee Evans and Linda Evans may be able to establish that their emotional distress constituted bodily injury as contemplated by the UIM policy, Farmers has agreed that it will not contest the amount of the claims. All claims for UIM coverage asserted by Cody Evans have been settled and released by separate agreement of the parties.

## STANDARD OF REVIEW

[¶ 8] An insurance policy constitutes a contract between the insurer and the insured. *Helm v. Board of County Comm'rs*, 989 P.2d 1273, 1275 (Wyo.1999). When called upon to determine the meaning of a contract, our focus is upon the intent of the parties. *Wolter v. Equitable Resources Energy Co.*, 979 P.2d 948, 951 (Wyo.1999). The nature of the exercise depends upon the clarity with which the parties have memorialized their intent. Clarity and lack of ambiguity

limit the exercise to one of *interpretation* marked by a simple reiteration of the parties' intent gleaned from within the four corners of the document. *Sierra Trading Post, Inc. v. Hinson*, 996 P.2d 1144, 1148 (Wyo.2000).

[¶ 9] Only when a contract is ambiguous do we acquire license to *construe* that document by resort to rules of construction. *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo.1996); *Martin v. Farmers Ins. Exch.*, 894 P.2d 618, 620 (Wyo. 1995). An exception to construing insurance policies as other contracts has been observed by this court where the language of the policy is ambiguous. *Ahrenholtz v. Time Ins. Co.*, 968 P.2d 946, 949 (Wyo.1998); *State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 765 (Wyo.1988). "Because insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer." *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1024 (Wyo.1993) (citing *St. Paul Fire & Marine Ins. Co. v. Albany County Sch. Dist. No. 1*, 763 P.2d 1255, 1258 (Wyo.1988)).

> Ambiguity is found if indefiniteness of expression or double meaning obscure the intent of the parties, though disagreement between the parties as to the Agreement's meaning does not give rise to an ambiguity.

*Hansen v. Little Bear Inn Co.*, 9 P.3d 960, 964 (Wyo.2000). Whether there is ambiguity within the four corners of the contract is a question of law. *Martin v. Farmers Ins. Exchange*, 894 P.2d at 620.

### DISCUSSION

[¶ 10] The insurance contract between the parties calls, at page 7, for coverage of bodily injury incurred in an accident arising out of the ownership, maintenance, and operation of an underinsured vehicle. A common sense reading of the term "bodily injury," without more, may indeed connote physical harm rather than emotional harm. In fact, we are aware that "the overwhelming majority of jurisdictions which have considered the issue hold that 'bodily injury' standing alone or defined in a policy as 'bodily injury [or harm], sickness or disease' is unambiguous and encompasses only physical harm." *Citizens Ins. Co. of America v. Leiendecker*, 962 S.W.2d 446, 452 (Mo.App. E.D.1998) (collecting cases); *see also* Keri Farrell Kolb, Note, *General Liability Coverage for Claims of Emotional Distress—An Insurance Nightmare*, 45 Drake L.Rev. 981, 986–989 (1997). Generally, in cases that analyze the definition of "bodily injury" cited by the Missouri court, the question is whether the term "bodily" modifies only injury or whether "bodily" also modifies the terms sickness and disease, thus creating coverage for bodily injury, bodily sickness, and bodily disease. Most courts addressing the issue have concluded the term "bodily" also modifies the terms sickness and disease, that "bodily" refers to some sort of physical harm, and that the definition of bodily injury in question is thus not ambiguous. *Citizens Ins. Co. of America v. Leiendecker*, 962 S.W.2d at 453; *Daley v. Allstate Ins. Co.*, 135 Wash.2d 777, 958 P.2d 990, 995 (1998).[1]

[¶ 11] However, the definition of bodily injury provided in the Evanses' policy does not fit squarely within the majority rule. The Evanses' policy defines bodily injury as

1. We note that, in determining this issue, at least one court has focused on whether the emotional injuries include physical manifestations. In *SL Industries, Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266, 1274 (1992), the Supreme Court of New Jersey wrote:

> We recognize that the difficulty in distinguishing between mental and physical injuries may justify characterizing "bodily injury" to be ambiguous in some circumstances. Nonetheless, that occasional difficulty does not justify holding the term "bodily injury" to be ambiguous with respect to all types of emotional injuries. The phrase should be analyzed on a case-by-

case basis to determine whether the alleged injuries are sufficiently akin to physical injuries to render the term "bodily injury" ambiguous.

(Citations omitted.) The court went on to conclude: "[I]in the context of purely emotional injuries, without physical manifestations, the phrase 'bodily injury' is not ambiguous." 607 A.2d at 1275. Because the record is bereft of any information regarding whether the Evanses' emotional distress includes physical manifestations, the analysis of the New Jersey court is not helpful in this instance.

"bodily harm to or sickness, disease or death of any person." Clearly, given the grammatical structure employed in this definition, the term "bodily" does not modify the terms sickness or disease. Thus, the question becomes whether the emotional distress claimed by the Evanses' can be included under the rubric of either sickness or disease.

[¶ 12] *Webster's Third New International Dictionary* (1986) defines "disease" as:

1 a *obs* : lack of ease : DISCOMFORT, UNEASINESS, TROUBLE, DISTRESS b (1) : an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors (as malnutrition, industrial hazard or climate), to specific infective agents (as worms, bacteria, or viruses), to inherent defects of the organism (as various genetic anomalies), or to combinations of these factors : SICKNESS, ILLNESS (2) : a particular instance or kind of such impairment : MALADY, AILMENT c: disorder or derangement (as of the mind, moral character, public institutions, or the state) d: an alteration that impairs the quality of a product usu. caused by the action of microorganisms 2 a *obs* : a cause of discomfort or harm b: an organism that causes disease.

The same source defines "sickness" as

1 a: the condition of being ill : ill health : ILLNESS b: a disordered, weakened, or unsound condition 2 a: a form of disease : MALADY b: MENSES 3 a: NAUSEA QUEASINESS b: VOMIT.

[¶ 13] After reviewing these definitions of the terms disease and sickness, we conclude that emotional injuries are neither expressly included nor expressly excluded from those definitions. Indeed, in contemplating the extent of a "disorder or derangement" or "disordered, weakened, or unsound condition,"

this court finds anything but a bright line. We thus conclude that the definition of bodily injury contained in the insurance policy before us is ambiguous with respect to whether emotional distress is included in the definition. In making this conclusion, we find guidance from New York's highest court in the case of *Lavanant v. General Accident Ins. Co. of America,* 79 N.Y.2d 623, 584 N.Y.S.2d 744, 595 N.E.2d 819, 822 (1992), which provides:

The categories "sickness" and "disease" in the insurer's definition not only enlarge the term "bodily injury" but also, to the average reader, may include mental as well as physical sickness and disease.

We decline [the insurance company's] invitation to rewrite the contract to add *"bodily* sickness" and *"bodily* disease," and a requirement of prior physical contact for compensable mental injury. [The insurance company] could itself have specified such limitations in drafting its policy, but it did not do so.

The New York Court of Appeals thus held that the term bodily injury, as defined in the policy before it, was ambiguous. *Id.; see also Lanigan v. Snowden,* 938 S.W.2d 330, 332 (Mo.App. W.D.1997); *cf. David v. Nationwide Mut. Ins. Co.,* 106 Ohio App.3d 298, 665 N.E.2d 1171, 1173 (1995). We make the same conclusion and resolve the ambiguity in favor of coverage. *Doctors' Co. v. Insurance Corp. of America,* 864 P.2d at 1024.

[¶ 14] Because we find an ambiguity in the definition of bodily injury as applied in this instance, we answer the certified question in the affirmative.