2002 WY 172

PRINCIPAL LIFE INSURANCE COMPANY, Appellant (Third Party Defendant),

v.

SUMMIT WELL SERVICE, INC., a corporation; Ann P. Allen, in her capacity as the Personal Representative and Executrix of the Estate of Robert M. Allen, deceased; and Ann P. Allen, individually, Appellees (Defendants/Third Party Plaintiffs).

Byron R. Woodard, Appellant (Plaintiff/Third Party Defendant),

v.

Principal Life Insurance Company, a corporation, Appellee (Third Party Defendant).

Nos. 01–183, 01–184.

Supreme Court of Wyoming.

Nov. 22, 2002.

Rehearing Denied Jan. 7, 2003.

Peter K. Michael of Peter K. Michael, P.C., Cheyenne, Wyoming, Representing Principal Life Insurance Company.

V. Anthony Vehar of Vehar Law Offices, P.C., Evanston, Wyoming, Representing Byron Woodard.

Ray G. Martineau, Anthony R. Martineau, and Brett D. Cragun of Salt Lake City, Utah, Representing Summit Well Service, Inc.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Upon the death of its insured, Robert Allen, Principal Life Insurance Company (Principal) delivered the proceeds under Mr. Allen's life insurance policy to his business associates, Brent Nelson and Byron Woodard. Ann Allen, Mr. Allen's widow, claims the delivery to Mr. Nelson and Mr. Woodard was improper and the insurance policy proceeds should have been paid to her. She contends Summit Well Service, Inc., a Utah corporation owned solely by her late husband, was the named beneficiary under the policy and she, as the only authorized representative of the corporation after her husband's death, was entitled to the policy proceeds. Principal argues delivery to Mr. Nelson and Mr. Woodard was proper because the named beneficiary under the policy was Summit Well Service (Summit), a partnership consisting of Mr. Allen, Mr. Woodard, and Mr. Nelson. After a bench trial, the trial court agreed with Mrs. Allen and ordered Principal to pay $1,516,046.74 (the amount of the policy plus interest, costs, and attorney's fees) to Mrs. Allen. We reverse and remand.

## ISSUES

[¶ 2] Principal, as the appellant in Case No. 01–183, raises the following issues:

I. Whether the trial judge's conclusion that Principal breached the insurance contract was clearly erroneous[.]

II. Whether the claims against Principal were barred by W.S. § 26–15–102(d)[.]

* Chief Justice at time of oral argument.

III. Whether the claims against Principal were barred by equitable estoppel[.]

IV. Whether the claims against Principal were barred by ratification of the delivery of policy benefits[.]

V. Whether the third party plaintiffs were entitled to attorneys' fees and interest under W.S. § 26–15–124(c)[.]

VI. Whether the trial judge abused his discretion in awarding over $220,000 in attorneys' fees[.]

VII[ ]. Whether the trial judge abused his discretion in awarding costs[.]

Summit Well Service, Inc., an appellee in Case No. 01–183, lists the same issues in its brief.

[¶ 3] Mr. Woodard, the appellant in Case No. 01–184, presents the following issues:

A. Did the district court err in its interpretation of the written contract between Robert M. Allen and Appellant Byron R. Woodard?

B. Was the district court clearly erroneous in its finding that Appellant Woodard was guilty of intentional misrepresentation (deceit) in regard to the payment of death benefit proceeds by Principal Life Insurance Company to Summit Well Service by and through Brent Nelson?

Principal, as the appellee in Case No. 01–184, phrases the issues as:

I. Whether Principal had any liability to Third Party Plaintiff Summit Well Service, Inc. that would create a basis for the cross-claim against Woodard[.]

II. Whether Principal's cross-claim for indemnity could be based on fraud, as well as its other legal theories[.]

## FACTS

[¶ 4] In 1997, Mr. Allen was the sole shareholder, officer, and director of three companies: Summit; Duel Production, Inc. (Duel); and Trans Pacific Investments, Inc., doing business as A.C.T. (A.C.T.). During that year, Mr. Allen was also involved in business dealings with Mr. Woodard and Mr. Nelson relating to the three companies. On July 2, 1997, in furtherance of their business dealings, Mr. Allen and Mr. Woodard and Mr. Allen and Mr. Nelson, respectively, entered into letter agreements intended to set out the parameters of their business relationships. In the letter agreements, Mr. Allen agreed to transfer a twenty percent interest in Summit, Duel, and A.C.T. to Mr. Woodard and a forty percent interest in those entities to Mr. Nelson. In return for receiving the equity interests, Mr. Woodard and Mr. Nelson agreed to operate and manage the businesses on a day-to-day basis.

[¶ 5] In September of 1997, Mr. Allen, Mr. Woodard, and Mr. Nelson applied with Principal for individual $1 million life insurance policies. The information provided to Principal when the applications were made showed Mr. Nelson and Mr. Allen were the owners of Summit and Mr. Woodard was an employee. All three applications listed Summit as "owner." The men submitted applications and authorization forms with their applications which were signed by Mr. Nelson as owner of the insurance.

[¶ 6] Initially, Mr. Allen and Mr. Nelson named their respective estates as beneficiaries under their policies, and Mr. Woodard named Summit as his beneficiary. After discussions between Principal's agents and Mr. Allen and Mr. Nelson, their policies were amended to name Summit as the beneficiary under their policies. The policies were issued with the amendments on January 28, 1998. Mr. Nelson's signature appears on the acknowledgement of delivery form as "contract owner." Insurance premiums for the policies were paid by checks signed by either Mr. Allen alone or Mr. Allen and Mr. Woodard jointly and issued from bank accounts in the name of Summit, A.C.T, or Duel. Three months after the insurance policies were issued, on April 24, 1998, Mr. Allen died in a motorcycle accident.

[¶ 7] On April 1, 1998, three weeks before Mr. Allen's death, the State of Utah involuntarily dissolved Summit Well Service, Inc. because it failed to file an annual report. There is no evidence in the record that, prior to Mr. Allen's death, any steps were taken to officially transfer ownership interests in Summit, Duel, or A.C.T. to Mr. Woodard or Mr. Nelson or to make them officers or directors. There also is no indication in the record of any formal partnership agreement other than the July 2, 1997, letter agree-

ments, nor are there any other partnership records.

[¶ 8] After her husband's death, Mrs. Allen attempted to obtain a copy of the policy and a claim form from Principal. In making the request, Mrs. Allen informed Principal that her husband was the sole owner of Summit Well Service, Inc. and she was his personal representative. Mrs. Allen enclosed copies of the will appointing her personal representative of the estate and the stock purchase agreement reflecting her late husband's purchase of Summit Well Service, Inc. Principal denied Mrs. Allen's request for a copy of the policy and a claim form on the ground that she did not provide sufficient proof that she was an authorized representative of the policy owner or beneficiary. It did refer Mrs. Allen to claims specialist Mike Wagner who was investigating the claim, and he came to Wyoming to interview her. Mrs. Allen also informed Mr. Wagner during the interview that her husband was the sole owner and director of Summit Well Service, Inc. On May 22, 1998, Mrs. Allen filed an application for reinstatement of Summit Well Service, Inc., and the State of Utah granted the application.

[¶ 9] On June 15, 1998, Mr. Nelson submitted a claim for payment of benefits under the policy, listing himself as beneficiary and signing his name in the signature block. Upon receipt of his claim on June 26, 1998, Principal informed Mr. Nelson that he needed to submit a new claim listing Summit rather than himself as the beneficiary and signing as the authorized representative of the business. Mr. Nelson submitted a second claim form on June 30, 1998. Meanwhile, on June 19, 1998, Mr. Woodard and Mr. Nelson filed a complaint against Mrs. Allen, Summit, Duel, and A.C.T. alleging Mrs. Allen had assumed control of, and was refusing to recognize their interest in, the three businesses and she was attempting to bypass their interest in the insurance policy proceeds by having the benefits paid directly to her.

[¶ 10] On July 9, 1998, Principal issued a check in the amount of $1,008,370.41 (the policy proceeds plus interest) to Summit. The check was hand delivered to Mr. Woodard on July 10, 1998. It was deposited into a bank account in Utah, and the proceeds were later split between Mr. Woodard and Mr. Nelson.

[¶ 11] On the morning of July 10, 1998, prior to delivering the insurance proceeds to Mr. Woodard, Principal received a telephone call from Billie Crocker, counsel for Mrs. Allen. Jerry Mogenson, senior claim administrator, took the call and informed Ms. Crocker that he did not have sufficient documentation substantiating Mrs. Allen's status with Summit to allow him to release a copy of the policy and a claim form to her. Ms. Crocker indicated she would send additional documentation by facsimile. At 9:10 a.m., a facsimile arrived informing Principal that Mr. Nelson was terminated from his employment with Summit on May 6, 1998, and Mrs. Allen was the sole shareholder, president, and director. Attached to the facsimile were a letter from Mrs. Allen to Summit Well Service, Inc. directing the corporation to transfer all ownership to her as personal representative of the estate; a written consent in lieu of directors meeting executed by Mrs. Allen appointing herself director of the corporation; and a certificate of good standing for Summit Well Service, Inc. dated June 1, 1998, from the Utah Department of Commerce. Upon reviewing the documentation, Mr. Mogenson left a message for Ms. Crocker at 11:15 a.m. indicating he would send her a copy of the policy and a claim form. He also told her Principal had already issued a check that was on its way to Mr. Nelson, the authorized business representative at the time of Mr. Allen's death. Except perhaps for a follow-up call from Ms. Crocker to Mr. Mogenson on July 10, 1998, clarifying the earlier telephone message, Principal received no further communication from Mrs. Allen or her representatives concerning the policy or the proceeds until February 16, 1999, when a subpoena duces tecum was served at Principal's business office for insurance company records.

[¶ 12] On August 10, 1998, Mrs. Allen, Summit, Duel, and A.C.T. filed an answer to the complaint alleging Mr. Woodard and Mr. Nelson were merely former employees of the businesses and had no ownership interest in the companies or the life insurance proceeds. Mrs. Allen also filed a counterclaim alleging

Mr. Woodard and Mr. Nelson had wrongfully obtained the insurance proceeds and converted them to their personal use. Numerous and lengthy procedural wranglings followed, and, on January 27, 1999, it was disclosed to the court that the insurance proceeds were not available and had not been available for a number of months because they had been spent on the business.

[¶ 13] Additional motions and hearings followed, and, on May 27, 1999, Mrs. Allen, Summit, Duel, and A.C.T. requested leave to file a third-party complaint against Principal. The trial court granted the motion, and, on July 2, 1999, a third-party complaint was filed alleging various claims, including breach of contract and bad faith against Principal. Principal answered the complaint and filed a cross-claim for indemnity against Mr. Woodard and Mr. Nelson.

[¶ 14] A trial to the court commenced on October 18, 2000, on Mrs. Allen's claims against Principal for breach of contract and bad faith and Principal's claim for indemnity against Mr. Woodard and Mr. Nelson. The court issued its ruling on November 17, 2000, finding in favor of Mrs. Allen, Summit, Duel, and A.C.T. and against Principal for breach of contract based upon improper payment of the insurance proceeds. The court found in favor of Principal on the bad faith claim and on the cross-claim against Mr. Woodard.

[¶ 15] On April 26, 2001, the court entered lengthy findings of fact and conclusions of law. Of most importance to the issues this court finds determinative, the trial court reached the following conclusions as a matter of law:

1. No partnership ever existed by or between Allen, Woodard, and/or Nelson.

2. Allen's policy/contract of insurance is not ambiguous and Principal is charged with full notice that Summit was a corporation and not a partnership.

[¶ 16] The trial court entered judgment against Principal in the amount of $1,516,049.74 (the policy amount plus interest, attorney's fees, and costs). It entered an amended order on June 29, 2001, awarding Principal judgment against Mr. Nelson and Mr. Woodard, jointly and severally, in the amount of $1,516,046.74 plus costs and attor-

ney's fees. Principal and Mr. Woodard timely appealed.

## STANDARD OF REVIEW

[¶ 17] An insurance policy constitutes a contract between the insurer and the insured. *Evans v. Farmers Insurance Exchange,* 2001 WY 110, ¶ 8, 34 P.3d 284, ¶ 8 (Wyo.2001); *Helm v. Board of County Commissioners, Teton County, Wyoming,* 989 P.2d 1273, 1275 (Wyo.1999). As with other types of contracts, our basic purpose in construing or interpreting an insurance contract is to determine the parties' true intent. *Polo Ranch Company v. City of Cheyenne,* 969 P.2d 132, 136 (Wyo.1998). We must determine intent, if possible, from the language used in the policy, viewing it in light of what the parties must reasonably have intended. *Sinclair Oil Corporation v. Republic Insurance Company,* 929 P.2d 535, 540 (Wyo. 1996). The nature of our inquiry depends upon how clearly the parties have memorialized their intent. *Evans,* 2001 WY 110, ¶ 8, 34 P.3d 284. Where the contract is clear and unambiguous, our inquiry is limited to the four corners of the document. *Id.; Sierra Trading Post, Inc. v. Hinson,* 996 P.2d 1144, 1148 (Wyo.2000).

[¶ 18] We interpret an unambiguous contract in accordance with the ordinary and usual meaning of its terms. *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1,* 763 P.2d 1255, 1258 (Wyo.1988). The parties to an insurance contract are free to incorporate within the policy whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the policy. *Hulse v. First American Title Company of Crook County,* 2001 WY 95, ¶ 37, 33 P.3d 122, ¶ 37 (Wyo.2001); *St. Paul Fire and Marine Insurance Co.,* 763 P.2d at 1258. It is only when a contract is ambiguous that we construe the document by resorting to rules of construction. *Evans,* 2001 WY 110, ¶ 9, 34 P.3d 284; *Sinclair Oil Corporation,* 929 P.2d at 539; *Martin v. Farmers Insurance Exchange,* 894 P.2d 618, 620 (Wyo.1995). Whether a contract is ambiguous is a question for the court to decide as a matter of

law. *Evans,* 2001 WY 110, ¶ 9, 34 P.3d 284; *Martin,* 894 P.2d at 620.

 [¶ 19] A contract is ambiguous if indefiniteness of expression or double meaning obscure the parties' intent. *Evans,* 2001 WY 110, ¶ 9, 34 P.3d 284; *Hansen v. Little Bear Inn Company,* 9 P.3d 960, 964 (Wyo. 2000). Ambiguity cannot be created by the subsequent disagreement between the parties regarding the meaning of a contract. *Farmers Insurance Exchange v. Dahlheimer,* 3 P.3d 820, 826 (Wyo.2000); *Frost Construction Company v. Lobo, Inc.,* 951 P.2d 390, 394 (Wyo.1998). If the meaning of a provision in a contract is not readily apparent, the court may resort to competent evidence of extraneous circumstances to determine the parties' intent. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994). Reviewing courts are free to make a determination as to the existence of ambiguity whether or not the parties agree one way or the other and whether or not the trial court has reached a conclusion one way or the other. *Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo.1996); *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* 612 P.2d 463, 465 (Wyo.1980).

 [¶ 20] The trial court in this case entered extensive findings of fact and conclusions of law. We review a trial court's conclusions *de novo. Polo Ranch Company,* 969 P.2d at 136; *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). A judge's factual findings are subject to a broader scope of review than a jury verdict is; the appellate court may examine all the properly admissible evidence appearing in the record. *Polo Ranch Company,* 969 P.2d at 136. We will not disturb the trial court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

## DISCUSSION

### A. Breach of Contract

[¶ 21] Mrs. Allen alleges the intended beneficiary of the life insurance proceeds is Summit Well Service, Inc., a Utah corporation owned solely by her late husband. Principal claims Summit, a partnership consisting of Mr. Allen, Mr. Woodard, and Mr. Nelson, was the intended beneficiary. Faced with these opposing claims, the trial court held as a matter of law that: (1) no partnership ever existed among Mr. Allen, Mr. Woodard, and Mr. Nelson; and (2) the policy unambiguously provides Summit Well Service, Inc., the corporation owned solely by Mr. Allen, was the intended beneficiary. Accordingly, the court held Principal breached the insurance contract by paying the policy proceeds to Mr. Woodard and Mr. Nelson. It ordered Principal to repay the policy amount to Mrs. Allen as the authorized representative of Summit Well Service, Inc.

 [¶ 22] We begin by determining whether the trial court properly concluded as a matter of law that the insurance contract was unambiguous. In making this determination, we look to the printed policy itself, the application, and any amendments. "The general rule is that the application becomes a part of the agreement between the parties, and that the policy and application, taken together, constitute the contract of insurance." 3 Eric Mills Holmes, Appleman on Insurance 2d § 15.16 at 266–67 (1998).

 [¶ 23] The insurance policy issued by Principal on Mr. Allen's life contains the original application for insurance and an amendment to the application. The original application lists Mr. Allen as the insured, his estate as the beneficiary, and Summit as the owner of the policy and his employer. It also lists Mr. Allen's occupation as "owner" of Summit. On a separate page of the application, Mr. Nelson, "CEO" of Summit, is listed as the owner of the insurance. The amendment to the application dated January 28, 1998, and stamped "received" February 9, 1998, changes the beneficiary from the estate to "Summit Well Service—Employer." Mr. Nelson is listed again on the amendment to the application as the policy owner.

 [¶ 24] Looking at these provisions of the policy, we hold the trial court erred as a matter of law in concluding the insurance contract is unambiguous. The insurance contract on its face is susceptible to double

meaning. It is not clear from the four corners of the document whether the Summit Well Service named as beneficiary is Summit Well Service, Inc., the Utah corporation which Mrs. Allen alleges was owned solely by her late husband, or is instead Summit, which Principal alleges was jointly owned and operated by Mr. Allen, Mr. Woodard, and Mr. Nelson. Because we find the beneficiary description on the face of the insurance contract susceptible to double meaning and, therefore, ambiguous, we look to all the surrounding circumstances and extrinsic evidence pertaining to the context within which the contract was formed in order to determine the parties' intent. *Polo Ranch Company*, 969 P.2d at 140.

[¶ 25] The parties to the insurance contract were Mr. Allen as the insured with Mr. Nelson as the owner and Principal as the insurer. It is their intent in entering into the insurance contract that we must look to in determining the meaning of the beneficiary provision. The intent of persons not party to the contract, or their suppositions as to the intent of the contracting parties, is not relevant to our inquiry except to the extent that it may shed light on circumstances surrounding formation of the contract.

[¶ 26] Principal agent Nancy Douglas testified Mr. Allen and Mr. Nelson provided the information contained in the application for insurance. Based upon that information, Ms. Douglas testified that, in September when contract negotiations began, she understood the purpose of the insurance was to provide protection for Mr. Allen and Mr. Nelson in the event something happened to Mr. Woodard. She testified further that, based upon her discussions with Mr. Allen, Mr. Nelson, and Mr. Woodard, she did not understand Summit to be a corporation; rather, she understood there were three companies being operated under the umbrella of Summit which were jointly owned by Mr. Allen, Mr. Woodard, and Mr. Nelson.

[¶ 27] As to the precise nature of the business entity, Ms. Douglas testified the owners themselves were unsure throughout the discussions what they wanted although at some point they told her Summit was a partnership with Mr. Woodard owning twenty percent and Mr. Allen and Mr. Nelson each owning forty percent. In a discussion between Mr. Allen and Ms. Douglas sometime between September 26 and October 2, 1997, Mr. Allen said that Mr. Woodard had been given twenty percent of all three businesses, Mr. Woodard was the only one with working knowledge of the businesses, and Mr. Allen and Mr. Nelson each owned forty percent of the businesses.

[¶ 28] Ms. Douglas' understanding of the business relationship is memorialized in the following excerpts from an undated letter, which she faxed to another Principal representative on October 2, 1997:

> The [c]ompany is owned by Brent Nelson and Robert Allen. The [i]nsurance on them[ ]selves is for a buy out in case of either death. I can provide guidelines for the company for a buy sell agreement, [i]f necessary.... But within their [c]orporation there are three [c]ompanies, Summit Well Service ... A.C.T[.][and] Duel .... Byron Woodard is the [k]ey [e]mployee for all three companies. He also owns 20% interest in all three companies. He not only is the [k]ey employee, [h]e is the only one who knows the workings of all 3 companies. Robert Allen and Brent Nelson are the investors behind all three companies. Byron's duties include [s]enior [r]ig [s]uperintendent, for Summit, and he is a[c]onsultant for both of the other companies. Robert and Brent over[ ]see the [a]dministration and [f]inancial duties.

Ms. Douglas testified this, in essence, was her understanding throughout her discussions with Mr. Allen, Mr. Woodard, and Mr. Nelson. She also testified that, before writing the letter, she reinterviewed all three business associates to make sure her understanding was correct.

[¶ 29] Ms. Douglas further testified she did not know there was a corporation by the name of Summit Well Service, Inc. and she had never heard mention of Mrs. Allen during the time the policy was being discussed. None of the three business associates—Mr. Allen, Mr. Woodard, or Mr. Nelson—ever used the name Summit Well Service, Inc. or indicated the beneficiary under the policy was a Utah corporation.

[¶ 30] Ms. Douglas' testimony is supported by Mr. Woodard's testimony that it

was his understanding the three policies were purchased to protect the partnership—"if anything happened to any one of the three of us, the other two would have this to rely on to continue in business." Mr. Nelson likewise testified:

> [T]he intent of the [insurance] was for the benefit of the remaining two surviving partners if one passed away and it was explained to the insurance broker that way. The insurance broker explained it back to us that way and even went so far as to explain that this does not cover the estate, this does not cover your family, if you wanted family insurance then you need to take out additional insurance.

[¶ 31] With respect to the nature of their business association, Mr. Woodard testified Mr. Allen told him "he allowed all of the corporations to lapse intentionally, that his ultimate intention was to tie all of the entities into a public stock offering." Mr. Nelson testified, "We didn't have a corporation. . . . We let it lapse. We had no intent of operating it as that corporation, we started this public shell to roll all of these companies into." Mr. Nelson further testified, "Bob never wanted . . . the organization to be tightly defined because it put him in a box that maybe he couldn't get out of. He never knew which would be to his advantage, to be a corporation, a private entity, a public corporation, a partnership, and that's the way he did business."

[¶ 32] The testimony of Mrs. Allen's attorney lends support to the evidence that Mr. Allen never intended for the Utah corporation to be the beneficiary under the policy and, in fact, intended to let it lapse. Ms. Crocker testified Summit Well Service, Inc. was dissolved on April 1, 1998, and, as a consequence, its authority to do business in Wyoming was revoked on July 1, 1998.

[¶ 33] The testimony of these witnesses is supported by documentation in the record showing that each of the participants in the business association—Mr. Allen, Mr. Woodard, and Mr. Nelson—met with Ms. Douglas in the same time frame for the purpose of taking out individual life insurance policies. Each participant designated Summit as beneficiary under his policy, Mr. Woodard doing so from the beginning and Mr. Allen and Mr. Nelson accomplishing the same by amendment to their policies. Each policy names Mr. Nelson as owner of the insurance, a fact of some importance given there is no contention he was involved in Summit Well Service, Inc., the Utah corporation owned solely by Mr. Allen. Mr. Nelson also signed off as "owner" on the forms acknowledging Principal had delivered the three policies. The businesses paid the premiums on the policies with checks signed by Mr. Allen alone or Mr. Allen and Mr. Woodard jointly. These factors, together with the testimony of Principal's agent who handled the negotiations and the corroborative testimony of Mr. Nelson and Mr. Woodard as to the circumstances surrounding the formation of the contract, persuade us the parties' intent was that Summit, a business association of Mr. Allen, Mr. Woodard, and Mr. Nelson, was to be the beneficiary under the policy. Given this determination, Principal did not breach the contract of insurance when it paid the policy proceeds to Mr. Nelson.

[¶ 34] In reaching this result, we find it unnecessary to determine whether the "Summit Well Service" named in the policy is a partnership, corporation, or some other type of business entity. The record clearly establishes the insurance was intended to protect the business, and, upon the death of the insured, the insurer delivered the proceeds to the authorized representative of that business irrespective of the form of the business entity. Mr. Nelson, to whom the proceeds were paid as the authorized representative of Summit, was either a partner or an officer of the business. These are the factors we find determinative, not whether Summit was a partnership or a corporation or whether Mrs. Allen had authority to act on behalf of the corporation.

[¶ 35] We are aware Mrs. Allen will be negatively affected by our holding that Principal properly delivered the proceeds to Mr. Nelson and Mr. Woodard. However, we are convinced from the record before us that our ruling effectuates the parties' intent to the insurance contract. Moreover, throughout these proceedings, other remedies were available to Mrs. Allen to protect her interests. Some of those remedies were pursued early on; others apparently were not. We cannot let concern for Mrs. Allen or the fact

she may not have pursued all available remedies determine the outcome in this case. Our duty is to review the record before us and arrive at the result supported by the law.

[¶ 36] We hold the business, Summit Well Services, was the intended beneficiary under the policy; Principal properly paid the policy proceeds to Mr. Woodard and Mr. Nelson as authorized representatives of that business; and there was no breach of contract. This holding makes it unnecessary for us to address Principal's claims under Wyo. Stat. Ann. § 26–15–102(d) (LexisNexis 2001) of the Wyoming Insurance Code or for equitable estoppel and ratification. Our holding also is determinative of Principal's claim that the trial court improperly awarded attorney's fees, costs, and interest. Wyo. Stat. Ann. § 26–15–124(c) (LexisNexis 2001) allows the award of attorney's fees and interest where it is determined the insurance company's refusal to pay is unreasonable or without cause. Costs are awardable under W.R.C.P. 54(d)(1) to the "prevailing party." Having determined that payment of the policy proceeds to Mr. Woodard and Mr. Nelson was proper, we conclude no basis exists for awarding fees, costs, and interest to Mrs. Allen. Our holding likewise makes it unnecessary for us to consider the issues raised by Mr. Woodard in Case No. 01–184.

## CONCLUSION

[¶ 37] We hold the trial court erred in concluding as a matter of law that the insurance contract unambiguously designated Summit Well Service, Inc. as beneficiary. Applying the applicable *de novo* standard of review, we hold the beneficiary designation contained in the contract is ambiguous as a matter of law. Reviewing all the circumstances surrounding formation of the contract, we are persuaded the parties' intent was to name Summit, the business association of Mr. Allen, Mr. Woodard, and Mr. Nelson, as beneficiary under the policy. Principal properly paid the insurance proceeds to Mr. Nelson as the authorized representative of Summit, and there was no breach of contract.

[¶ 38] The judgment in favor of Mrs. Allen against Principal is reversed. The judgment in favor of Principal against Mr. Woodard and Mr. Nelson is also reversed. The cases are remanded to the trial court with directions that an amended judgment be entered which is consistent with this opinion.