2004 WY 29

Ron BIXLER, Appellant (Plaintiff),

v.

ORO MANAGEMENT, L.L.C.; and Brad Hyde and Zane Pasma, Appellees (Defendants).

No. 03–44.

Supreme Court of Wyoming.

March 24, 2004.

Representing Appellant: Kenneth S. Cohen, Jackson, Wyoming.

Representing Appellees: Richard Mathey, Green River, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶1]   Ron Bixler and Oro Management, LLC, (Oro) purchased property jointly and received a warranty deed as tenants in common.  When Mr. Bixler sought partition of the property, Oro claimed the parties had a prior agreement that Mr. Bixler's tenancy in common did not extend to the mineral estate.  The district court granted partial summary judgment in favor of Oro holding the prior agreement, which preceded the warranty deed, was determinative of the parties' interests.  However, the district court also held that agreement was ambiguous regarding what the parties intended by a "net mineral interest."  After a trial on that issue, the district court held Mr. Bixler was only entitled to partition of the surface and gravel rights, and not the mineral estate.  We reverse.

## ISSUES

[¶2]   Mr. Bixler frames the issues on appeal as follows:

1.  Did the district court correctly rule on summary judgment that the parties' respective interests in the Atlantic City property were controlled by the earlier unrecorded napkin agreement

rather than the subsequent recorded warranty deed?

2. Did the district court err in finding that the napkin agreement was sufficiently definite to constitute an enforceable contract?

3. Did the district court correctly interpret the napkin agreement provision that Plaintiff's interest in the Atlantic City property "... will consist of 50 percent of [the] property which will be held in [tenants] in [common] and he is to receive ... 25 [percent] of the net mineral rights" to mean that Plaintiff does not own an undivided fifty percent interest in the mineral estate, and that he has no possessory interest in the minerals?

[¶ 3]   Pursuant to Rule 7.02 of the Wyoming Rules of Appellate Procedure, Oro presents no issues on appeal and, instead, addresses the issues raised by Mr. Bixler.

## FACTS

[¶ 4]   In March 1999, Mr. Bixler and Zane Pasma, a member of Oro, met to discuss the joint purchase of 1700 acres of land in Atlantic City, Wyoming.   The property included mining claims which the parties were interested in developing for gold.   On April 25, 1999, Mr. Bixler and Mr. Pasma met again, this time in Rock Springs, Wyoming, to further discuss the purchase.   Mr. Bixler's mother, Charlene Bixler, was present at the meeting and served as the "note taker."   The parties referred to Ms. Bixler's notes as the "napkin agreement."   The hand-written napkin agreement was signed by both parties and stated:

An agreement between Zane J. Pasma doing business as Oro Management, LLC Company, not registered with state of Wyoming

Ron Bixlers part of this agreement in monies is the price of $365,000 thousand will consist of 50 % percent of property which will be held in [tenants] in [common] and he is to receive (40) forty percent of the gravel and 25 percent of the net mineral rights

Mineral rights are to include load claims, placer material, stock piles and any other [pertinent] material from under or above ground.

[¶ 5]   On May 12, 1999, less than one month after the meeting in Rock Springs, the parties accepted and recorded a warranty deed drafted by the seller's attorney, which conveyed "the following described real estate" to Mr. Bixler and Oro as tenants in common.   The legal description of the property consisted of a list of lode and placer mining claims.   Both parties testified they intended to have additional documents prepared spelling out the details of their agreement.   However, no such documents were ever prepared.

[¶ 6]   The parties agreed Oro would be responsible for obtaining all necessary permits to mine the property and assume all costs related to the mining.   Oro obtained some equipment and began limited preliminary work on developing a gold mine.   However, two years later, Mr. Bixler became dissatisfied with the progress of the project.   Also, Mr. Bixler learned that Oro had borrowed its share of the purchase price and encumbered the property with a mortgage to secure the loan.   He claimed the mortgage violated the parties' agreement and damaged his interest in the property.

[¶ 7]   On October 3, 2001, Mr. Bixler filed suit against Oro and its members seeking partition of the Atlantic City property.   He alleged the parties had agreed that if no income was realized from the property within two years, the property would be sold and the proceeds divided equally between the parties.   He also claimed damages for breach of contract and fraud as a result of the mortgage and conversion of gold and other unspecified minerals.   Oro answered contending Mr. Bixler had no right to partition and they had agreed that if no income had been realized within five years they would "re-evaluate the highest and last use of the property."   Oro also claimed the mortgage was not improper and no income had been produced from the property.   After discovery was concluded, Oro filed a motion for summary judgment contending the parties' interests in the property were governed by

the napkin agreement, and, as it interpreted that agreement, Mr. Bixler had no possessory right to the mineral estate and, thus, no right to partition it as a matter of law. Further, Oro claimed the breach of contract and fraud claims were moot because the mortgage had been released, and no conversion could be claimed because no minerals had been produced. Mr. Bixler filed a motion for partial summary judgment claiming the warranty deed conveyed fifty percent of the surface and mineral estate to him and he was entitled to partition of the property.

[¶ 8] At the summary judgment hearing, Mr. Bixler conceded Oro's summary judgment motion on the breach of contract, fraud and conversion claims. The district court denied Mr. Bixler's motion for partial summary judgment on partition concluding the parties' interests in the property were governed by the napkin agreement and not the warranty deed. The district court determined that the napkin agreement indicated Mr. Bixler had a fifty percent interest in the surface estate, and a forty percent interest in the gravel, and "there is no contention otherwise." However, the court found the term "net mineral rights" was ambiguous and ordered a trial to determine what the parties intended by the phrase "twenty five percent of the net mineral rights."

[¶ 9] After two days of testimony concerning the meaning of "net mineral rights," the district court concluded the parties intended the term to mean Mr. Bixler had the right to receive twenty-five percent of the net revenues from mineral production on the Atlantic City property. The district court reasoned that while the deed created a tenancy in common and the parties' interests in the property were presumed to be equal, that presumption was successfully rebutted by a prior agreement between the parties that Mr. Bixler held no possessory or ownership interest in the mineral estate. Consequently, the district court held he was not entitled to partition of the minerals. He was entitled, however, to partition of fifty percent of the surface estate and forty percent of the gravel

as the district court interpreted the napkin agreement.[1] This appeal followed.

## STANDARD OF REVIEW

[¶ 10] Our standard for reviewing summary judgments is as follows:

> Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all the favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. We do not accord any deference to the district court's decision on issues of law.

*Connely v. McColloch (In re Estate of Drwenski)*, 2004 WY 5, ¶ 12, 83 P.3d 457, ¶ 12 (Wyo.2004), quoting *Mathewson v. City of Cheyenne*, 2003 WY 10, ¶ 4, 61 P.3d 1229, ¶ 4 (Wyo.2003).

[¶ 11] We review a trial court's conclusions of law *de novo*. *Principal Life Insurance Co. v. Summit Well Service, Inc.*, 2002 WY 172, ¶ 20, 57 P.3d 1257, ¶ 20 (Wyo. 2002). A judge's factual findings are subject to a broader scope of review than a jury verdict; the appellate court may examine all the properly admissible evidence appearing in the record. We will not disturb the trial court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* Findings of fact of the trial judge can also

---

1. The parties did not challenge the district court's order of partition of fifty percent of the surface estate and forty percent of the gravel, and, therefore, that order stands and is unaffected by our decision herein.

lose the insulation of the clearly erroneous standard if they are induced by an erroneous view of the law, or contain factual and legal conclusions that reflect the application of an improper legal standard. *Shores v. Lindsey*, 591 P.2d 895, 899–900 (Wyo.1979).

### DISCUSSION

[¶ 12] Mr. Bixler asserts the grantors conveyed the property including the mineral estate, by warranty deed, to him and Oro as tenants in common and parol evidence cannot be considered to contradict the terms of the deed. As a matter of law, Mr. Bixler contends the terms of the napkin agreement merged into the deed and the unambiguous terms of that deed granted him an undivided fifty percent interest in the Atlantic City property including both the surface and mineral estates. Oro concedes the napkin agreement merged into the deed and, pursuant to the well-recognized rule, when a deed conveys property as a tenancy in common, the grantees are presumed to take in equal shares. However, Oro argues this presumption is a rebuttable one and parol evidence can be considered to prove the parties intended a different result.

*Merger*

[¶ 13] Our review of the district court's ruling must begin with an analysis of the doctrine of merger. Wyoming law clearly states:

> In accordance with contract law generally, all provisions in a contract are merged into the deed when executed and delivered except those covenants which are deemed to be collateral to the sale. Thus, the deed regulates the rights and liabilities of the parties.

*Bakken v. Price*, 613 P.2d 1222, 1227 (Wyo. 1980) (quoting 8A *Thompson on Real Property*, § 4458, p. 331.) *See also Glenrock v. Abadie*, 71 Wyo. 414, 259 P.2d 766 (1953). Acceptance of the deed is, prima facie, full performance of the contract to convey. 9 *Thompson on Real Property* § 82.13(d), p. 676 (1962). It is conclusively presumed that the deed represents the final agreement of the parties. *Id.*

[¶ 14] Other jurisdictions have likewise applied the doctrine of merger to warranty deeds in similar situations. *See Shinn v. Buxton*, 154 F.2d 629 (10th Cir.1946); *Marino v. Dwyer–Berry Construction*, 146 A.D.2d 751, 537 N.Y.S.2d 234 (N.Y.App.Div. 1989); *In re Jenkins*, 74 B.R. 440 (Bankr. N.D.Ga.1987). In *Hansen v. Stichting Mayflower Recreational Fonds*, 898 F.Supp. 1503, 1515–1516 (C.D.Utah 1995), discussing whether a prior agreement controlled rather than subsequent warranty deeds, the court stated:

> It is clear to the court that the three deeds which arose out of the [agreement] are not ambiguous. Their terms are certain and clear, and there are no facial deficiencies or missing terms. By these tests, the parties' objective intent is certain. *Thus, there is no reason to look to either contemporaneous documents such as the escrow instructions and RPI, or to prior documents such as the [Agreement] in order to ascertain the parties' intent.*

> Moreover, the merger doctrine would preclude such action, particularly with regard to the Loan Agreement and escrow instructions. Under the merger doctrine, "when the acts to be performed by the seller in a contract relate only to delivery of title to the buyer ... the deed is the final agreement and all prior terms, whether written or verbal, are extinguished and unenforceable. The basis for imposing the doctrine of merger is 'not due to any peculiar sanctity attaching to the deed itself, but because it is regarded as the final repository of the agreement which led to its execution. When the terms of the deed cover the same subject matter as the antecedent agreement, the deed controls." Thus, "acceptance of the deed by the buyer manifests his acceptance of [the seller's] performance even though the estate conveyed may differ from that promised in the antecedent agreement." Although the merger doctrine may appear to be harsh, it "serves the purpose of 'preserving the integrity of the final document of conveyance and encouraging the diligence of the parties.'"

*Id.* (emphasis added) (citations omitted). The effect of the doctrine of merger by deed is to substitute the provisions of the deed for all antecedent agreements. *See* Charles S. Parnell, Annotation, *Deed as Superseding or Merging Provisions of Antecedent Contract Imposing Obligations Upon the Vendor,* 38 A.L.R.2d 1310 (1954).

[¶ 15] An exception to merger provides that contractual obligations collateral to the transaction may survive closing and be enforced under the contract. *Rehnberg v. Hirshberg,* 2003 WY 21, ¶ 13, 64 P.3d 115, ¶ 13 (Wyo.2003) (quoting Lawrence Berger, *Merger by Deed—What Provisions of a Contract for the Sale of Land Survive the Closing?,* 21 Real Estate L.J. 22, 24 (1992)). A collateral obligation is one that is not "deed-related." Berger, *supra,* at 32. Deed-related provisions are those concerning "title, possession [and] quantities or emblements of the land." *Rehnberg,* 64 P.3d at 119. Clearly, the collateral obligation exception does not apply here where Oro contends the napkin agreement was intended to govern title to the property. Consequently, the terms of the napkin agreement merged into the warranty deed.

### Nature of the Interest Created by the Deed

[¶ 16] Application of the doctrine of merger, however, is not the end of the story. We must also interpret the language of the deed to determine the interests owned by Mr. Bixler and Oro. In interpreting a deed, we first examine its terms and give them their plain and ordinary meaning. *McGee v. Caballo Coal Co.,* 2003 WY 68, ¶ 11, 69 P.3d 908, ¶ 11 (Wyo.2003). Plain meaning is that "meaning which [the] language would convey to reasonable persons at the time and place of its use." *Id.* We interpret a warranty deed like a contract "from specific language of the deed," and "begin by looking at the instrument itself." *Glover v. Giraldo,* 824 P.2d 552, 554 (Wyo.1992).

[¶ 17] This warranty deed conveyed all "real estate" described in the attached legal description. That description consisted of a list of thirty-four placer and lode mining claims. A placer and lode mining claim is "a parcel of land that contains precious metal in its soil or rock and that is appropriated by a person, according to established rules and customs, known as the process of location".[2] *Black's Law Dictionary,* 1010 (7th ed.1999). The effect of the deed was to convey title to those mining claims to the grantees as tenants in common. The rights that accrue to owners of valid unpatented mining claims on public lands filed pursuant to the 1872 Mining Law, 30 U.S.C.A. 21 et seq., include the right of possession and enjoyment of both the surface and the subsurface, which right is enforceable against both third parties and the United States. "Ownership Interests in Valid Unpatented Mining Claims," American Law of Mining, Ch. 36, § 36.01. Consequently, the conveyance to Mr. Bixler of a tenancy in common in the described mining claims gave him a possessory interest in both the surface and subsurface contained within the claims.

[¶ 18] To construe a deed, a court must consider the intent of the parties gathered from the plain and unambiguous language contained therein. *Gasaway v. Reiter,* 736 P.2d 749, 751 (Wyo.1987). The general rule is that parol evidence may not contradict, vary, or add to deeds. *Schulz v. Miller,* 837 P.2d 71, 75 (Wyo.1992); *See also* Ferdinand S. Tinio, Annotation, *The Parol Evidence Rule and Admissibility of Extrinsic Evidence to Establish and Clarify Ambiguity in Written Contract,* 40 A.L.R.3d 1384 (2004); *Midkiff v. Castle & Cooke, Inc.,* 45 Haw. 409, 368 P.2d 887 (1962) (there being no ambiguity in the deed as construed, the parol evidence rule applied, and extrinsic evidence of the surrounding facts and circumstances existing prior to, contemporaneously with, and subsequently to the execution of the deed was not competent to contradict, defeat, modify, or otherwise vary the meaning or legal effect of the deed.) The deed to the Atlantic City property is unambiguous. It describes the property conveyed and de-

---

**2.** The deed does not indicate whether the claims are patented or unpatented. However, it makes no reference to a mineral survey number and, therefore, we can assume the claims are unpatented.

clares the parties take all of such property as tenants in common.

[¶ 19] Tenancy in common is a recognized concept in the law and is undoubtedly the most common type of concurrent estate in land. Roger A. Cunningham, William Stoebuck, Dale Whitman, *The Law of Property*, § 5.2 at 188 (1993). If the instrument does not specify the shares of each co-tenant, it will be presumed that they take equal undivided interests. However, this presumption may be rebutted by proof that the co-tenants contributed unequal amounts toward the purchase price of the property and there is neither a family relationship among the co-tenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts toward the purchase price. *Id.* at 191. *See also* 7 *Powell on Property* § 50.02[5] at 50–51 (2000). This presumption is widely accepted. An Ohio court stated:

> "The rule is well established that where two or more persons take as tenants in common under an instrument which is silent in regard to their respective shares, there is a presumption that their shares are equal." This presumption can be rebutted by the introduction of evidence showing unequal contributions toward the purchase price. . . .

*Bien v. Bien*, 1999 Ohio App. LEXIS 2942 (citation omitted). *See also Gawryluk v. Poynter*, 654 N.W.2d 400 (N.D.2002); *Reitmeier v. Kalinoski*, 631 F.Supp. 565 (D.N.J. 1986).

[¶ 20] Oro claims the napkin agreement can be considered, even though it constitutes parol evidence, because it rebuts the presumption that the tenants in common own equal shares of the property. However, a fatal flaw exists in Oro's reasoning because the napkin agreement is offered not to disprove equal shares owned by the tenants in common, but to prove Mr. Bixler obtained *no possessory interest* in the mineral estate at all. That premise directly contradicts the terms of the deed which unmistakably conveyed the right of possession of the surface and mineral estate. Parol evidence that directly contradicts the terms of the deed is inadmissible. *Schulz*, 837

P.2d at 77–78. The district court erred when it relied upon the napkin agreement to determine Mr. Bixler's possessory interest and to deny partition of the mineral estate. While parol evidence can be considered to rebut the presumption of equal shares, it cannot be relied upon to contradict the deed itself.

[¶ 21] In *Schulz*, we held that a deed conveying real property to two persons as joint tenants with a right of survivorship defined their interest in the property, and parol evidence could not contradict the terms of the deed. *Id.* at 75. Schulz sought to introduce parol evidence that he paid the entire purchase price and did not intend that Miller acquire an undivided one-half ownership in the parcel. This Court held the terms of the deed were unambiguous and parol evidence could not be considered to determine the parties' rights to the property. In the current case, because the deed is unambiguous, the holding in *Schulz* is particularly applicable. No parol evidence can be considered to determine what property rights were granted because the deed provides the answer.

[¶ 22] As a final note, even if the napkin agreement did not contradict the terms of the deed, we question whether it qualifies as the type of evidence other courts have allowed to rebut the presumption of equal shares as tenants in common. Generally, such rebuttal evidence has been limited to proof of unequal contribution. The Missouri Supreme Court, which recognizes the rebuttable presumption, stated:

> "[T]his presumption may be rebutted by proof, e.g., that the co-tenants contributed unequal amounts toward the purchase of the property and there is neither a family relationship among the co-tenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts towards the purchase price."

*Christen v. Christen*, 38 S.W.3d 488, 492 (Mo.Ct.App.2001) (citation omitted).

[¶ 23] That concept is echoed in *Binning v. Miller*, 55 Wyo. 478, 102 P.2d 64 (1940), in which we held that "in the absence of an agreement to the contrary, joint purchasers

of an estate hold shares therein in proportion to their contribution to the purchase price." In fact, the bulk of the authority relied upon by Oro to support the use of parol evidence to rebut the presumption of equal shares involved evidence of unequal contribution. However, the record contains no evidence that Mr. Bixler and Oro contributed unequally to the purchase of the property. To the contrary, Mr. Bixler paid $365,000 of the $700,000 purchase price.

## CONCLUSION

[¶ 24] As a result of our holding that the napkin agreement does not control the parties' interests, we need not address Mr. Bixler's arguments that the district court misinterpreted the napkin agreement, or in the alternative, the napkin agreement was insufficiently definite to warrant enforcement.[3] We reverse the district court's holding that Mr. Bixler had no right to possession of the mineral estate and remand with instructions to enter summary judgment for Mr. Bixler on the issue of partition of his mineral interest.

---

**3.** However, we do observe the napkin agreement's cryptic, confusing language raises numerous questions, not the least of which includes how Mr. Bixler could have a right to possess a portion of the gravel, but not the minerals, when gravel is considered a mineral on most federal lands. *Watt v. Western Nuclear, Inc.,* 462 U.S. 36, 103 S.Ct. 2218, 76 L.Ed.2d 400, (1983). Also, the napkin agreement appears to be only a bare outline with no reference to various critical terms such as the method of calculation of a "net mineral interest" or whether Oro had any obligation to conduct mining operations at all or within any specific time frame.