59 P.3d 721 (2002)
2002 WY 179
T.M., a Minor, Through R.T. COX, her Guardian Ad Litem; A.O., a Minor, through Cheryl Ranck Schwartz, her Guardian Ad Litem, Appellants (Intervenors-Defendants),
v.
EXECUTIVE RISK INDEMNITY INC., a Delaware corporation, Appellee (Plaintiff).
No. 01-264.
Supreme Court of Wyoming.
December 16, 2002.
Rehearing Denied January 15, 2003.
*722 W.W. Reeves of Reeves & Miller, Casper, Wyoming, Representing Appellants.
Dan B. Riggs and Jonathan Botten of Lonabaugh & Riggs, Sheridan, Wyoming; and Cathy A. Simon, Charles A. Jones, and Vicki *723 E. Fishman of Ross, Dixon & Bell, L.L.P., Washington, DC, Representing Appellee.
Before HILL, C.J., and GOLDEN, LEHMAN,[*] KITE, and VOIGT, JJ.
KITE, Justice.
[¶ 1] T.M. and A.O. (children), through their appointed guardians ad litem, appeal from a summary judgment in favor of Executive Risk Indemnity Inc. (Executive) holding a professional liability policy issued to Beth D. Griswold, Ed.D. (Dr. Griswold), a psychologist, provides no coverage for injuries sustained by the children as a result of sexual abuse by Dr. Griswold's husband while they were in foster care in the Griswold home. We hold the professional services provision and the household member exclusion contained in the policy are ambiguous. Construing those provisions against the insurer, we further hold: (1) there is coverage under the professional services provision of the policy if a jury determines Dr. Griswold negligently performed or failed to perform psychological services for the children while they were under her care; and (2) whether the children "regularly reside[d] with" Dr. Griswold is a question of fact precluding application of the household member exclusion as a matter of law to deny coverage. Accordingly, we reverse the district court's order and remand for further proceedings.

ISSUES
[¶ 2] We address the following issues:[1]
1. Whether there is coverage for Dr. Griswold under the professional services provision of the policy if she negligently performed or failed to perform professional services for the children while they were under her care.
2. Whether application of the household member exclusion as a matter of law to deny coverage is precluded because whether the children regularly resided with Dr. Griswold is a question of fact.

FACTS
[¶ 3] Dr. Griswold was a licensed psychologist in the State of Wyoming with background *724 and experience working with child victims of abuse. In 1996, the Department of Family Services (DFS) recruited and selected Dr. Griswold and her husband as foster parents, and it placed the children in their home for foster care. While the children were under the Griswolds' care, Mr. Griswold sexually abused them.[2]
[¶ 4] In 1999, the children, through their appointed guardians ad litem, filed a complaint against Dr. Griswold alleging claims for negligence[3] and professional negligence. The complaint alleged Dr. Griswold knew, prior to taking the children into her home, that her husband had previously been accused of sexually abusing children and yet she informed no one at DFS of his prior history. It further alleged that Dr. Griswold held herself out to DFS as being specially qualified to serve as a foster parent and DFS relied on her professional expertise and experience in selecting her home for foster care and placing the children in her care. The complaint alleged that Dr. Griswold breached her professional duties as a psychologist by failing to disclose her husband's history to DFS, taking the children into her home when she knew his history, and failing to recognize and act upon signs that abuse was occurring.
[¶ 5] Executive filed a declaratory judgment action seeking a determination that the professional liability insurance policy issued to Dr. Griswold provided no coverage for the claims against her. The children intervened and counterclaimed for declaratory judgment requiring Executive to defend and indemnify Dr. Griswold. Executive responded with a motion to dismiss and for judgment on the pleadings, contending there was no coverage because Dr. Griswold had no duty to perform and, in fact, performed no professional services for the children and because the policy excludes claims by regular residents of the psychologist's household.
[¶ 6] After a hearing, the district court denied the motion, finding "a reasonable person might conclude that Dr. Griswold was providing professional services to the [children] and that they were not regular residents of the household." The parties proceeded with discovery and then filed cross-motions for summary judgment. After a hearing, the district courta different judge presidinggranted Executive's motion for summary judgment, holding there was no coverage under the professional liability policy for Dr. Griswold's alleged negligence. The decision letter states, "a reasonable person would probably conclude that Dr. Griswold exhibited negligence in her dealings with [the children], D.F.S., and her husband." However, the district court concluded that, as a matter of law, the professional services provision did not apply because Dr. Griswold did not have a solely professional relationship with the children and the household member exclusion did apply because the children regularly resided with her.

STANDARD OF REVIEW
[¶ 7] Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to judgment as a matter of law. Matlack v. Mountain West Farm Bureau Mutual Insurance Company, 2002 WY 60, ¶ 6, 44 P.3d 73, ¶ 6 (Wyo.2002). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. Id. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. Id. We evaluate the propriety of a summary judgment using the same standards and materials as the lower court used. Id. We do not accord deference to the district court's decisions on issues of law. Id.

DISCUSSION
[¶ 8] An insurance policy is a contract and is subject to the general rules of *725 contract construction. First Wyoming Bank, N.A., Jackson Hole v. Continental Insurance Company, 860 P.2d 1094, 1097 (Wyo.1993). Where the contract is clear and unambiguous, our inquiry is limited to the four corners of the document. Principal Life Insurance Company v. Summit Well Service, Inc., 2002 WY 172, ¶ 17, 57 P.3d 1257; Evans v. Farmers Insurance Exchange, 2001 WY 110, ¶ 8, 34 P.3d 284, ¶ 8 (Wyo.2001); Sierra Trading Post, Inc. v. Hinson, 996 P.2d 1144, 1148 (Wyo.2000). We interpret an unambiguous contract in accordance with the ordinary and usual meaning of its terms. St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1, 763 P.2d 1255, 1258 (Wyo.1988). It is only when a contract is ambiguous that we construe the document by resorting to rules of construction. Evans, 2001 WY 110, ¶ 9, 34 P.3d 284; Sinclair Oil Corporation v. Republic Insurance Company, 929 P.2d 535, 539 (Wyo.1996); Martin v. Farmers Insurance Exchange, 894 P.2d 618, 620 (Wyo.1995). Whether a contract is ambiguous is for the court to decide as a matter of law. Evans, 2001 WY 110, ¶ 9, 34 P.3d 284; Martin, 894 P.2d at 620. A contract is ambiguous if indefiniteness of expression or double meaning obscure the parties' intent. Evans, 2001 WY 110, ¶ 9, 34 P.3d 284; Hansen v. Little Bear Inn Company, 9 P.3d 960, 964 (Wyo.2000). Because insurance contracts are contracts of adhesion where the insured has little or no bargaining power to vary the terms, we strictly construe ambiguities against the insurer. Evans, 2001 WY 110, ¶ 9, 34 P.3d 284. In the case before us, two particular provisions of the Executive insurance policy are at issue: the professional services provision and the household member exclusion.

A. Professional Services Provision
[¶ 9] The policy provides that it covers claims made against Dr. Griswold for her wrongful acts. The term "wrongful act" is defined in the policy as follows:
"Wrongful Act" means any actual or alleged negligent act, error or omission, or any actual or alleged Defamation solely in the performance of, or actual or alleged failure to perform, professional services for others in Your profession as a psychologist, including Your services as a member of a formal accreditation or professional review board of a hospital or professional society, or professional licensing board.
(Emphasis added.) The children argue there is insurance coverage pursuant to this provision because, in failing to recognize the risk of or prevent the sexual abuse, Dr. Griswold negligently performed or failed to perform professional services in her profession as a psychologist within the meaning of the policy. Executive disputes this reading of the policy, arguing there is no coverage because Dr. Griswold was acting as a foster parent, not a psychologist, to the children and any wrongful acts or omissions she may have committed were not solely in the performance of or failure to perform professional services as the policy requires.
[¶ 10] In interpreting the professional services provision, as with any other contract provision, we look first to the four corners of the document and interpret the language, if possible, according to its plain and ordinary meaning. The provision states there is coverage for any negligent act or omission or any defamation solely in the performance of or failure to perform professional services to others as a psychologist. The most striking feature of the provision is that it does not lend itself easily to reasonable interpretation. When read literally as it is written, the provision suggests there is coverage for: (1) any negligent acts and omissions, whether or not in the performance of professional services; and (2) defamations solely in the performance of professional services. We do not find this to be a reasonable interpretation given the policy is a psychologist's professional liability policy implying coverage not for any and all negligence but for only professional negligence. We mention this possible interpretation merely to illustrate the provision's poor draftsmanship. The difficulty of interpretation does not end there.
[¶ 11] The provision can be read to suggest rather broad coverage is intended. The provision does not, for example, restrict coverage to negligence in providing professional *726 services to "patients" or "clients" but provides coverage for negligence in performing professional services for "others." The provision likewise suggests there is coverage for "any" negligent act or omission in the performance of or failure to perform professional services rather than delineating specific acts or omissions for which coverage is available. It also appears from the last clause of the provision that the intended scope of coverage goes beyond actual therapy or counseling servicesit expressly includes service on professional boards within the phrase "professional services for others in [y]our profession as a psychologist." Use of the word "including" implies the existence of a range of other professional services not specifically enumerated in the policy. Viewed in this light, the provision seems to provide coverage for a rather broad spectrum of psychological services.
[¶ 12] However, as Executive points out, the use of the word "solely" in the provision suggests a narrower scopeone limiting coverage to acts or omissions committed by Dr. Griswold while acting exclusively as a psychologist in a formal professional relationship with a patient or client and not in some broader capacity. Executive asserts that, because Dr. Griswold was acting as a foster mother for the children and DFS throughout the period of abuse and not solely, if at all, as the children's psychologist, the professional liability policy does not cover her acts.
[¶ 13] "Solely" is defined as "1 : without an associate (as a companion or assistant) : singly, alone 2 : to the exclusion of alternate or competing things (as persons, purposes, duties)." Webster's Third New International Dictionary 2168 (1961). Giving the word "solely" its plain and ordinary meaning and reading it in isolation from the other language in the provision, one might interpret the provision as excluding coverage for all but a narrow category of negligent acts or omissions occurring exclusively in the context of a psychologist-patient relationship. Taken to its extreme, the word "solely" might even be read to require such a complete nexus between the negligent act and the performance of professional services as to exclude coverage if professional services are provided to anyone with whom the psychologist also happens to be friends, attends church, or has some other nonprofessional relationship. Given the broad language used elsewhere in the provision, we are not convinced such a strict, literal interpretation was intended or is reasonable.
[¶ 14] Instead, presented with language which lends itself to such vastly different interpretations, we are compelled to conclude the provision is ambiguous. We apply the rule that ambiguity in an insurance policy is construed against the insurer and in favor of coverage. Application of this rule leads us to reject Executive's interpretation of the provision as excluding coverage because the alleged acts of professional negligence occurred while Dr. Griswold was also acting as a foster parent for the children and DFS. Rather, construing the provision against the drafter, we hold there is potential coverage under the policy for professional negligence if Dr. Griswold negligently performed or failed to perform psychological services for the children even though she was also acting as a foster parent.
[¶ 15] In reaching this result, we point to the rule that we will not construe a contract of insurance so strictly as to thwart the general object of the insurance. Eisenbarth v. Hartford Fire Insurance Company, 840 P.2d 945, 950 (Wyo.1992). This policy was intended to protect Dr. Griswold from liability in the event she negligently performed or failed to perform services for others as a psychologist. When the ambiguities in the provision are construed in favor of coverage, the policy protects Dr. Griswold from liability if, in the course of agreeing to act or acting as a foster parent, she utilized her skills as a psychologist and did so in a negligent manner. If Executive intended to narrowly limit coverage to those situations where Dr. Griswold was providing formal psychological services to patients or clients with whom she had no other nonprofessional relationship, it could have easily done so. It did not, and we will not rewrite the policy to limit coverage in that manner.
[¶ 16] We remand the case for trial on the factual question of whether Dr. Griswold negligently performed or failed to *727 perform professional services for the children. In answering this question, the jury should consider the following principles:
First, a "professional service" is generally defined as one arising out of a vocation or occupation involving specialized knowledge or skills, and the skills are mental as opposed to manual. Second, the determination of whether a particular act or omission falls within the scope of a professional services exclusion depends upon the nature of the activity rather than the position of the person responsible for the act or omission.
Duke University v. St. Paul Fire and Marine Insurance Company, 96 N.C.App. 635, 386 S.E.2d 762, 765 (1990) (citation omitted). If, upon application of these principles to the facts presented, the jury finds Dr. Griswold provided services to the children arising out of her specialized knowledge or experience as a psychologist, it must consider whether her acts or omissions in doing so fell below the applicable standard of care for psychologists. If, however, the jury finds Dr. Griswold merely performed services for the children as any other foster parent would have doneservices which did not arise from her specialized knowledge or skills as a psychologist, the professional negligence claim must fail.
[¶ 17] The parties spend considerable time in their briefs addressing whether Dr. Griswold owed a professional duty to the children. Executive asserts that Dr. Griswold owed no duty to the children because she did not have a therapist/client relationship with them, a necessary prerequisite, Executive contends, to the existence of a duty. The children argue Dr. Griswold did owe a duty to them because she used her professional expertise while serving as a foster parent and, having done so, must be held to the same level of competence as any other psychologist in the performance of professional services.
[¶ 18] The determination of whether a duty exists is for the court to decide as a matter of law. JK ex rel. DK v. MK, 5 P.3d 782, 792 n. 2 (Wyo.2000).
A duty exists where, "upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the otheror, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant."
Id. (quoting Goodrich v. Seamands, 870 P.2d 1061, 1064 (Wyo.1994)). The existence of a physician-patient type relationship is one "such relation" which establishes a duty. Meyer v. Mulligan, 889 P.2d 509, 513 (Wyo.1995); Vassos v. Roussalis, 625 P.2d 768, 772 (Wyo.1981). The determination of whether a physician-patient relationship exists is typically a question of fact which cannot be resolved on summary judgment. Meyer, 889 P.2d at 513-14. In this case, the jury must determine whether a professional relationship existed between Dr. Griswold and the children; that is, whether, in the course of serving as a foster parent, Dr. Griswold performed professional services for the children. If the jury decides, based upon the facts presented, that a professional relationship existed between Dr. Griswold and the children, that finding establishes the duty, and the standard is fixed as that which is required of a reasonable person in light of the circumstances. Roybal v. Bell, 778 P.2d 108, 111 (Wyo.1989).

B. Household Member Exclusion
[¶ 19] The policy contains the following exclusion for claims brought by household members of the insured:
IV. EXCLUSIONSCLAIMS NOT COVERED:
We will not cover any Claim:
...
H. by any other person or organization covered under this policy, or for injury or damage sustained by any spouse or Household Member of any individual covered under this policy.
The policy defines household member as "any person who regularly resides with" the named insured.
[¶ 20] Executive claims, and the district court found, that the children regularly resided with Dr. Griswold within the meaning of the policy, so there was no coverage. The children argue they did not regularly reside *728 with Dr. Griswold within the policy's meaning because their placement in her home was a formal, temporary arrangement which the state regulated and controlled pursuant to contracts of varying lengths subject to termination when they were able to return to their permanent homes. The children also contend that whether they "regularly reside[d] with" Dr. Griswold is a question of fact for a jury to determine.
[¶ 21] We begin our discussion by noting that part of the claim in this case is that Dr. Griswold should never have agreed to the children being placed in her home. To the extent the children allege claims for negligence occurring before their actual placement in the Griswold home, we hold their injuries are not excluded under the household member exclusion. We are not willing to read the provision so broadly as to exclude claims for injuries which, although occurring while the children resided with Dr. Griswold, were set in motion by allegedly negligent acts or omissions preceding their placement in the home.
[¶ 22] Wyoming has not previously considered the meaning of the phrase "regularly resides with" in an exclusionary clause of an insurance policy. The court has considered, however, the meaning of the words "resident" and "residence" as used in Wyoming statutes. In that context, the court has said that, for purposes of the divorce statutes, the question of residence is one of fact. Black v. De Black, 1 P.3d 1244, 1249 (Wyo.2000). The court has also said that, in construing the Wyoming Insurance Guaranty Association Act, Wyo. Stat. Ann. §§ 26-31-101 through XX-XX-XXX (LexisNexis 2001), failure to define the term "resident" in the statute "makes it an ambiguous term which is subject to varying interpretations." Wyoming Insurance Guaranty Association v. Woods, 888 P.2d 192, 197 (Wyo.1994). While these cases are not directly relevant to the issue presented here, they do illustrate the broader point that the question of residency is generally factual in nature and, left undefined, the term is subject to differing interpretations.
[¶ 23] Among the jurisdictions that have considered the word "resident" or the phrase "regularly resides with" in an insurance policy, the results have varied. Finding the term "resident" to require more than temporary placement and to require an element of permanency, the court in Country Mutual Insurance Company v. Watson, 1 Ill.App.3d 667, 274 N.E.2d 136, 138 (1971), held there was coverage for injuries sustained by a foster child temporarily residing in the insured's home despite an exclusion for injuries sustained by residents of the insured's household. Several other courts have found coverage in the face of similar exclusions, holding that the words "resident" or "regularly resides with" are ambiguous and must be construed in favor of the insured. Zulakis v. Auto-Owners Insurance Company, No. 221948, 2001 WL 1480713, 2001 Mich.App. LEXIS 1874 (Mich.Ct.App. Nov.20, 2001); Vanguard Insurance Company v. Racine, 224 Mich.App. 229, 568 N.W.2d 156 (1997), appeal dismissed by 459 Mich. 946, 601 N.W.2d 99 (1999); Nationwide Mutual Insurance Company v. Diehl, 768 F.Supp. 140 (E.D.Pa.1990); Napier v. Banks, 19 Ohio App.2d 152, 250 N.E.2d 417 (1969).
[¶ 24] We find this approach persuasive. Just as the failure to define the term "resident" in the statutes makes it an ambiguous term subject to varying interpretations, Wyoming Insurance Guaranty Association, 888 P.2d at 197, the failure to define "regularly resides with" in an insurance policy leaves the phrase open to differing interpretations. We hold the undefined phrase "regularly resides with" as used in the policy is ambiguous. Construing it in favor of coverage, we reject Executive's contention that the children resided with Dr. Griswold as a matter of law and hold the issue is a question of fact for determination at trial.
[¶ 25] We are aware that, in construing similar policy language, other courts have reached the result Executive would have this court reach. Executive cites Jenks v. State, 507 So.2d 877 (La.Ct.App.1987), for example, in which the court construed a homeowner's policy containing an exclusion for bodily injury to residents of the insured's household. In that case, however, the policy expressly limited the term "residents" to the insured's relatives and "any other person under the *729 age of 21 who is in the care of" any insured. 507 So.2d at 879. Other courts have upheld policy exclusions containing the same or similar language. Merchants Mutual Insurance Co. v. Artis, 907 F.Supp. 886 (E.D.Pa.1995); Allstate Insurance Company v. Shockley, 793 F.Supp. 852 (S.D.Ind.1991), aff'd Allstate Insurance Company v. Desjarlais, 980 F.2d 733 (7th Cir.1992). Unlike the exclusions at issue in those cases, the policy in this case contains no limitation on the phrase "regularly resides with," nor does it attempt to define the phrase in any other way. On that basis, we find the exclusion in this case distinguishable from those in the above cited cases.
[¶ 26] Executive also cites A.G. by Waite v. Travelers Insurance Company, 112 Wis.2d 18, 331 N.W.2d 643 (Ct.App.1983), as support for upholding the exclusion. In that case, the court held that, as a matter of law, a child placed in a family operated foster home for one year pursuant to court order was a resident of the household for insurance purposes. The court based its holding on three factors: (1) state precedent; (2) evidence the family considered the foster care situation in contracting for insurance; and (3) "commonsense policy considerations," including a state statute suggesting the legislature intended foster children to be considered residents for insurance purposes. 331 N.W.2d at 648. None of these factors is present in this case, and, for that reason, we do not find the court's rationale in A.G. persuasive.

CONCLUSION
[¶ 27] The professional services provision and the household member exclusion contained in the policy are ambiguous. Construing the language against the drafter, we hold: (1) there is coverage under the professional services provision if a jury finds Dr. Griswold provided professional psychological services to the children while they were under her care, and (2) whether the children regularly resided with Dr. Griswold is a question of fact precluding application of the household member exclusion as a matter of law to deny coverage.
[¶ 28] Reversed and remanded for further proceedings consistent with this opinion.
LEHMAN, Justice, dissenting.
[¶ 29] I respectfully dissent. The definition of "wrongful act" in the insurance contract in this case appears to clearly set forth coverage for the insured while providing professional services for others as a psychologist. I am, therefore, unable to join the majority in finding ambiguity in that paragraph and, upon review of the analysis, am reminded of Doctors' Co. v. Ins. Corp. of America, 864 P.2d 1018, 1024 (Wyo.1993) in which we said: "The language of an insurance policy is ambiguous if it is capable of more than one reasonable interpretation ... the language will not be `tortured' to create an ambiguity." (Emphasis added.)
[¶ 30] The majority's reading and interpretation of the policy language seems to, if not torture, at least stretch the meaning of the words to arrive at an unreasonable and confusing interpretation. I read the policy language much more plainly. In my reading of the provision in question, I see only instances where the wrongful act is tied entirely to performance of a psychologist.
"Wrongful Act" means any actual or alleged negligent act, error or omission, or any actual or alleged Defamation solely in the performance of, or actual or alleged failure to perform, professional services for others in Your profession as a psychologist, including Your services as a member of a formal accreditation or professional review board of a hospital or professional society, or professional licensing board.
(Emphasis added.)
[¶ 31] It seems clear that the only reasonable interpretation of this provision leads to the conclusion that the covered "wrongful acts" are those that arise solely out of Dr. Griswold's profession as a psychologist. When I read this provision literally, I see that "wrongful acts" under this provision are any of the following that arise solely out of the performance of professional services in the doctor's profession as a psychologist: actual or alleged negligent acts, actual or alleged errors, actual or alleged omissions, or actual or alleged defamations. "Wrongful acts" also includes any actual or alleged failure *730 to perform professional services for others in the doctor's profession as a psychologist. The reason the last "wrongful act" must be separated from the rest of the list is to avoid contradiction. It would make little sense to say a "wrongful act" is an actual or alleged failure to perform professional services, solely in the performance of professional services. If the doctor has "failed to perform," then the doctor would not be "in the performance of" professional services. Such language style choices do not render the provision ambiguous.
[¶ 32] Furthermore, the meaning of the terms is determined by considering the document as a whole, not by considering small phrases in isolation as the majority opinion seems to do. "[W]e consider the contract as a whole, reading each part in light of all the other parts; ... in other words, we analyze `the tenor' of the contract." Examination Mgmt. Servs., Inc. v. Kirschbaum, 927 P.2d 686, 690 (Wyo.1996). The insurance policy in question was Dr. Griswold's psychologist malpractice insurance. The "tenor" of the contract was that of malpractice insurance covering Dr. Griswold for acts as a psychologist not as a foster parent.
[¶ 33] I come closer to agreement with the majority when the discussion turns to the question whether Dr. Griswold was providing professional services for the children. However, the evidence shows that the Griswold home was certified for regular foster care, rather than specialized or therapeutic foster care in which a foster parent would be expected to utilize his or her special training and expertise during the course of the foster care relationship.
[¶ 34] Further, in accordance with the understanding between Dr. Griswold and DFS, because Dr. Griswold was not acting as a specialized or therapeutic foster care provider, the children were receiving psychological counseling and therapy from psychologists other than Dr. Griswold. In fact, at trial, another psychologist testified that she was unaware of any professional relationship between Dr. Griswold and the children.
[¶ 35] Clearly, Wyo. Stat. Ann. § 14-3-205(a) (LexisNexis 2001) requires any person who has knowledge or reasonable cause to believe that a child has been or may be abused or neglected to report the situation to the appropriate authorities. I also do not dispute that, because of her education and experience, Dr. Griswold could have been more aware than the untrained person to observe signs of abuse. I agree with the district court decision letter that "a reasonable person would probably conclude that Dr. Griswold exhibited negligence in her dealings" with the children. However, for me that does not automatically cause the transposition from providing foster care to providing professional services to the children as a psychologist.
[¶ 36] I would, therefore, affirm the district court which considered at length the actual relationship between Dr. Griswold and the children. The district court was not given the opportunity to decide the issue of ambiguity within the contract because it was not raised below; however, I do agree with that court's understanding of the clear meaning of the contract language.
NOTES
[*] Chief Justice at time of oral argument.
[1] The children present these issues:

1. Whether a licensed psychologist has a duty to act for the benefit of two small girls placed as foster children with the psychologist and her husband by the State in reliance on the professional skill of the psychologist, when a reasonably competent psychologist in the same line of practice would have recognized, based upon professional training and standards under similar circumstances, that the two children were at high risk of sexual abuse by the psychologist's husband, or were being abused by him.
2. Whether a licensed psychologist regularly engaged by the Wyoming Department of Family Services (DFS) to provide counseling, training and assessment for families in need, including those where sexual abuse has occurred or is suspected, has a professional duty based upon the ongoing professional relationship to warn DFS of the risk of sexual abuse to children in DFS' custody by a foster father candidate where knowledge of the risk came to the psychologist from outside any DFS assignment?
3. Whether a licensed psychologist who uses her training as a psychologist in the care of foster children in her temporary custody has a duty to apply that professional skill with ordinary care.
4. If there is a duty as posed in Issue 1, 2 or 3, whether a breach of the duty is a "Wrongful Act" defined in the psychologist's professional liability insurance policy as "any actual or alleged negligent act, error or omission, or any actual or alleged Defamation solely in the performance of, or actual or alleged failure to perform, ... services for others in Your profession as a psychologist, ..."
5. Whether foster children placed temporarily with a psychologist and her husband by DFS, with the intention of restoring them to the home of their natural parents as soon as possible, "regularly" reside with the psychologist so that the Household Member exclusion of the psychologist's professional liability policy applies to the claim of the foster children.
Executive phrases the issues as:
1. Whether a psychologist['s] professional liability policy provides coverage for a claim brought on behalf of two foster children against their former foster mother where there was no professional relationship between the insured foster mother and either her foster children or any other relevant person or entity.
2. Whether a household member exclusion in a psychologist['s] professional liability policy precludes coverage for a claim brought on behalf of two foster children against their former foster mother for negligence that allegedly occurred while the children resided for ten and twenty months, respectively, in the home of their insured foster mother.
[2] Mr. Griswold was convicted of ten counts of second-degree sexual assault and two counts of taking indecent liberties with the children. Griswold v. State, 994 P.2d 920, 924 (Wyo.1999).
[3] The children voluntarily dismissed the negligence claim during the litigation, leaving only the professional negligence claim.