Jerome A. Holmes, Circuit Judge.
In this appeal, David James Burns and Robin Burns (as representatives of Tyler Burns) (collectively, the "Burnses") seek review of a district court order granting summary judgment in favor of American National Property and Casualty Company ("American National").
In October 2014, then-sixteen-year-old Phillip Sam shot and killed Tyler Burns. The Burnses brought a wrongful death action in state court against, among others, Phillip's mother, Dora Sam, alleging that she had negligently stored the handgun used in the shooting. Dora was a named policyholder of an American National homeowner's policy (the "Policy") effective at the time of the shooting, and she demanded that American National indemnify and defend her in the wrongful death action. American National then filed an action in federal court seeking a declaration that there was no coverage.
The district court granted summary judgment for American National. In relevant part, it concluded first that Phillip was a "resident" of Dora's home at the time of the shooting. And because the Policy defines "insureds" to include relatives who were "resident[s]" of a named insured's home, and excludes personal liability coverage for intentional and criminal actions by "any insured," the district court determined that there was no coverage as to Dora for the shooting. The court also ruled that this result was not unsettled by the Policy's inclusion of a severability clause, concluding that to determine otherwise would render the "any insured" exclusion meaningless.
The Burnses now raise two claims of error. First, they argue that Phillip was not a resident of Dora's household at the time of the shooting because he had been staying with his father, Nathan Sam, at that time and, relatedly, had expressed an intent or desire to live with Nathan. Second, they argue that there is an ambiguity introduced by including both an "any insured" exclusion and a severability clause in the same policy, and that this ambiguity must be construed in favor of coverage for Dora. The Burnses have also filed two motions - one a motion to certify issues presented in this case to the Wyoming Supreme Court, and the other to seal Volume VIII of the Appendix.[1]
For the reasons explained below, we conclude that "resident" as contained in the Policy is an ambiguous term that might reasonably be construed in favor of coverage for Dora, and we reverse and remand on this basis. Further, we deny both the motion to certify and the motion to seal.
I
After Dora and Nathan divorced in 2013, a decree gave them joint legal custody of their minor children, including Phillip, with Dora listed as the "primary residential *1048 custodian." Aplts.' App. at 370 (Divorce Decree, filed Sept. 10, 2013). In deference to Nathan's itinerant work schedule, Nathan was to have physical custody of the children when he was in Cheyenne, Wyoming; Dora was to have the children "all other times." Id. Consistent with the decree, Dora testified that Phillip lived with her and "sometimes lived with his dad." Id. at 225 (Dora Sam Dep., filed Oct. 6, 2017). Nathan also discussed this arrangement at his deposition, confirming that the children would "come over and spend time with [him] when [he was] in town." Id. at 234 (Nathan Sam Dep., filed Oct. 6, 2017).
From roughly October 1 to October 5, 2014, Phillip, then sixteen years old, stayed with Nathan, who had returned to Cheyenne from a work trip. At one point on October 5, Nathan dropped Phillip off at Dora's house for five or six minutes so Phillip could pick up his work uniform. Though Dora was out of town, Nathan and Phillip nevertheless "texted [her] ahead of time[]" before Phillip entered the house. Id. at 237. While he was inside, Phillip did not just grab his work uniform; he also stole Dora's boyfriend's semi-automatic pistol from the master bedroom closet. Phillip and Nathan then returned to Nathan's house for about an hour, at which time Nathan dropped Phillip off at a friend's house.
Early the following morning, Phillip shot and killed Tyler Burns with the pistol he took from Dora's house. When he was subsequently booked into jail, Phillip provided Nathan's address as his residence. Phillip was ultimately convicted of first-degree murder and related crimes. See Sam v. State, 401 P.3d 834 (Wyo. 2017), cert. denied, ___ U.S. ___, 138 S.Ct. 1988, 201 L.Ed.2d 248 (2018).
In September 2016, following Phillip's conviction, the Burnses brought a wrongful death and survival action against Dora, Dora's boyfriend, and Phillip in Wyoming state court for damages associated with Tyler's death. Dora, facing a claim for negligent storage of a handgun, demanded that American National indemnify and defend her under her homeowner's policy.
American National thereafter filed this action in federal court, naming Dora and the Burnses as defendants and seeking a declaration that insurance coverage did not exist. Moving for summary judgment, American National noted that the Policy's personal liability coverage does not apply to intentional or criminal actions by "any insured," Aplts.' App. at 26, 28 (Ex. 1 to Compl., filed Dec. 15, 2016), and, furthermore, that "insured[s]" under the Policy include the named policyholder "and the following residents of [their] household: a. [their] relatives[;] b. any other person under the age of 21 who is in the care of any person named above," id. at 15 (emphasis added). Though the Policy does not further define "resident," American National relied on these provisions to argue that Phillip was an "insured" - and thus (in its view) no coverage existed as to Dora for the shooting - because he was Dora's minor son who resided with her and was "in [her] care." Id. at 196-97 (Pl.'s Br. in Supp., filed Sep. 14, 2017). American National also argued that the Policy's severability clause, which states that "[t]his insurance applies separately to each insured," id. at 30, did not preclude exclusions of coverage to Dora for the intentional actions of other insureds. The Burnses opposed, arguing that Phillip was not a resident of Dora's home at the time of the shooting and that the severability clause created an ambiguity that had to be construed in favor of coverage for Dora.
The district court granted American National's motion, ruling first that Phillip was a "resident" of Dora's home at the time of the shooting because, inter alia, Dora was *1049 the "primary residential parent"; a person can have more than one residence at a time and can temporarily leave home without changing residences; and it is unclear whether a minor can form the intent to change residences, if such intent is necessary. Id. at 349-50 (Order Granting Pl.'s Mot. for Summ. J., dated Jan. 3, 2018). And because Phillip was a "resident" of Dora's household and also her relative, he was an insured under the Policy, and there was thus no coverage as to Dora for Phillip's intentional or criminal actions. The district court further concluded that the Policy's severability clause did not create an ambiguity that had to be construed in favor of coverage, reasoning that to hold otherwise would "basically render the exclusions meaningless." Id. at 357.
Following the district court's entry of judgment, the Burnses timely filed a notice of appeal, arguing that Phillip was not a "resident" of Dora's household at the time of the shooting and that the Policy's severability clause created an ambiguity that had to be construed in favor of coverage for Dora.
II
We "review the district court's entry of summary judgment de novo, applying the same standards as the district court." Bekkem v. Wilkie, 915 F.3d 1258, 1266-67 (10th Cir. 2019). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. Civ. P. 56(a); accord Fox v. Transam Leasing, Inc., 839 F.3d 1209, 1213 (10th Cir. 2016). When applying this standard, we "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." Havens v. Colo. Dep't of Corr., 897 F.3d 1250, 1259 (10th Cir. 2018) (quoting Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009)).
Under Wyoming law - the substantive law we apply in this diversity action, see, e.g., Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1277 (10th Cir. 2011) - "[t]he language of an insurance policy is ambiguous if it is capable of more than one reasonable interpretation." N. Fork Land & Cattle, LLLP v. First Am. Title Ins. Co., 362 P.3d 341, 346 (Wyo. 2015) (quoting Doctors' Co. v. Ins. Corp. of Am., 864 P.2d 1018, 1024 (Wyo. 1993)). And, "[b]ecause insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer." Hurst v. Metro. Prop. & Cas. Ins. Co., 401 P.3d 891, 895 (Wyo. 2017) (alteration in original) (quoting N. Fork Land, 362 P.3d at 346); see also T.M. ex rel. Cox v. Exec. Risk Indem. Inc., 59 P.3d 721, 726 (Wyo. 2002) ("[A]mbiguity in an insurance policy is construed against the insurer and in favor of coverage."). Relatedly, when insurance coverage is dependent upon how a term in a policy is defined and that term "is fairly susceptible of [multiple] constructions, the one favorable to the insured will be adopted." Aaron v. State Farm Mut. Auto. Ins. Co., 34 P.3d 929, 933 (Wyo. 2001) (quoting Commercial Union Ins. Co. v. Stamper, 732 P.2d 534, 539 (Wyo. 1987)); see also Mena v. Safeco Ins. Co., 412 F.3d 1159, 1163-64 (10th Cir. 2005).
III
To determine whether Phillip was a "resident" of Dora's household within the meaning of the Policy at the time of the shooting, we first consider whether the term "resident" is ambiguous under Wyoming law. Based on statements from the Wyoming Supreme Court, we conclude that it is.
*1050 Two cases primarily inform this conclusion, the first being Wyoming Insurance Guaranty Ass'n v. Woods, 888 P.2d 192 (Wyo. 1994). There, the Wyoming Supreme Court considered whether an individual claimant under the Wyoming Insurance Guaranty Association Act ("the Act") can have multiple residences within the context of the Act. This question was relevant since a "covered claim" under the Act is one involving, inter alia, a claimant who was a "resident of this state at the time of the insured event." Id. at 197 (quoting WYO. STAT. § 26-31-103(a)(ii)). In resolving the case, the court remarked that the "legislature's failure to define the term `resident' in the Act makes it an ambiguous term which is subject to varying interpretations," such that defining it required reference to "the context of its use ... with consideration for the purposes of the Act." Id. at 197-98; see id. (citing Willis L.M. Reese & Robert S. Green, That Elusive Word, "Residence," 6 VAND. L. REV. 561, 563 (1953), for the proposition that, at least as used in statutes, "`residence' is a word with extremely uncertain meaning"). Only after examining caselaw, Black's Law Dictionary, and the broader text and structure of the Act did the court conclude that a claimant could only have a single residence within the context of the Act. See id. at 197-99.
The second case, issued nearly a decade later by the Wyoming Supreme Court, is T.M. ex rel. Cox v. Executive Risk Indemnity Inc., supra. There, the Wyoming Supreme Court reiterated that, absent a provided definition, the meaning of "resident" is ambiguous. See 59 P.3d at 728. At issue in T.M. was an insurance policy exclusion that stated that no coverage existed for claims of injury or damage sustained by any "household member," with that term defined to include anyone who "regularly resides with" the named insured. Id. at 727. In interpreting the term "regularly resides with," the court raised "the broader point that the question of residency is generally factual in nature and, left undefined, the term is subject to differing interpretations." Id. at 728. The court relatedly found persuasive cases from several other jurisdictions "holding that the words `resident' or `regularly resides with' are ambiguous and must be construed in favor of the insured." Id. (citing Zulakis v. Auto-Owners Ins. Co., 2001 WL 1480713 (Mich. Ct. App. Nov. 20, 2001) (unpublished) (per curiam); Vanguard Ins. Co. v. Racine, 224 Mich.App. 229, 568 N.W.2d 156 (1997) (per curiam); Nationwide Mut. Ins. Co. v. Diehl, 768 F.Supp. 140 (E.D. Pa. 1990); Napier v. Banks, 19 Ohio App.2d 152, 250 N.E.2d 417 (1969)).
Thus, through Woods and T.M., the Wyoming Supreme Court has indicated that left undefined - as it is in the Policy - the term "resident" is ambiguous and subject to more than one reasonable interpretation. See 888 P.2d at 197; 59 P.3d at 728.
IV
Because we conclude that the term "resident" in the Policy is ambiguous, we now ask whether that term is "fairly susceptible" to an interpretation under Wyoming law that would be consistent with providing Dora Sam coverage in this case.[2] Aaron, 34 P.3d at 933 (quoting Commercial Union, 732 P.2d at 539).
*1051 We conclude that such an interpretation exists. First, as Woods illustrates, "resident" may be interpreted such that an individual cannot simultaneously hold multiple residences. See 888 P.2d at 197-99. In Woods, the Wyoming Supreme Court read "resident" in the Act to allow a claimant only one residence at a time, albeit largely because that reading was consistent with language located elsewhere in the Act. See id. at 198-99 ("The legislature provided an answer [to whether `resident' as defined in the Act allows for multiple concurrent residences] in another provision of the Act which ... [refers to a claimant's `place of residence,'] a term of art that designates a single locality.").
And if we read "resident" in the Policy to allow for only one residence at a time- which we have license to do, as Woods shows-that term can be further read such that Phillip had two alternating residences, with his residence at any time being a function of which parent he was staying with. After all, per the divorce decree, Phillip stayed with his "primary residential custodian"-Dora-at "all other times" besides when Nathan was in town. Aplts.' App. at 370 (emphasis added). These periodic stays with Nathan-also Phillip's residential custodian, though not the "primary" one, id.-can reasonably be deemed the periodic taking up of a residence by Phillip at Nathan's home; these stays were part of a "permanent or recurrent... or ... habitual" series of visits to Nathan's house, which "qualif[ies] as a residence." Woods, 888 P.2d at 198 (quoting S. Axelrod Co. v. Mel Dixon Studio, Inc., 122 Misc.2d 770, 471 N.Y.S.2d 945, 952 (N.Y. Civ. Ct. 1983)); see also id. ("The term `resident' has a primary meaning of `one actually living in a place for a time....'") (emphasis added) (quoting In re Yap, 39 Misc.2d 835, 241 N.Y.S.2d 976, 978 (N.Y. Sup. Ct. 1963)); cf. Vanguard Ins. Co., 568 N.W.2d at 159 ("It is possible to interpret the term `resident[]' to include [a] relative[] who periodically stay[s] in a home indefinitely, but maintain[s] a legal domicile at some other location during the same period.").
Under such a reading of "resident," Phillip was a resident of Nathan's, and not Dora's, home at the time of the shooting. Specifically, Nathan was in town at the *1052 time, and Phillip had been staying with him. Cf. Vanguard Ins. Co., 568 N.W.2d at 156, 159 (stating, when a child spent time in both of his parents' households (but primarily his mother's) pursuant to a divorce decree, that the home the child was at "on the day of the accident" was relevant to determining the child's residence under an insurance policy).
Furthermore, Phillip's actions both shortly before and shortly after the shooting help confirm that, to the extent that Phillip only had one residence at the time, that residence was Nathan's home. Cf. Allstate Ins. Co. v. Mocaby, 133 Idaho 593, 990 P.2d 1204, 1209 (1999) ("Whether a person is a resident of a particular place is to be determined from all the facts of each particular case...." (alteration marks omitted) (quoting AID Ins. Co. v. Armstrong, 119 Idaho 897, 811 P.2d 507, 511 (Ct. App. 1991))). For instance, when Phillip went to Dora's house to grab his work uniform and the gun he would use in the shooting, Dora was "texted ... ahead of time[]." Aplts.' App. at 237. This fact suggests that there was a shared understanding that Phillip at that time was to be with Nathan as a resident of Nathan's home, and, correspondingly, would not enter Dora's home without authorization, or at least without notice. Another manifestation of this understanding is the fact that Phillip wrote down Nathan's home as his residence when he was booked immediately following the shooting.
Our decision today should not be understood as a definitive pronouncement on the best or most reasonable reading of the term "resident"; instead, our interpretation of this term here reflects our adherence to Wyoming law's command for courts to construe ambiguities in insurance policies strictly in favor of coverage. See, e.g., T.M., 59 P.3d at 726; Doctors' Co., 864 P.2d at 1024. In that regard, our reading of the Policy term "resident"-to the effect that an individual may only have one residence at a time, and further that an individual periodically alternating between his parents' homes would be, at a given point in time, a resident of the home he or she is staying at-is a fair and reasonable one. And it is an interpretation that in fact favors coverage for Dora: because Phillip was not a "resident[] of [Dora's] household" under the Policy at the time of the shooting, Aplts.' App. at 15, he was not a Policy "insured," and his intentional, criminal actions would thus not fall within the "any insured" exclusion when determining Dora's coverage eligibility, id. at 26, 28. Under this reasoning, the district court reached the wrong result in interpreting the Policy. We are constrained to reverse.
V
A
The Burnses filed a motion to certify questions to the Wyoming Supreme Court. We deny this motion. First of all, the Burnses seek this relief for the first time on appeal-that is, only after they failed to prevail on their interpretive arguments before the district court. Ordinarily, such circumstances strongly disincline us to grant certification. See, e.g., United States v. Burkley, 513 F.3d 1183, 1187 (10th Cir. 2008) ("[W]e generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." (quoting Massengale v. Okla. Bd. of Exam'rs in Optometry, 30 F.3d 1325, 1331 (10th Cir. 1994))); Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1229 n.6 (10th Cir. 1996) (declining to certify in part because the requesting party "before the district court[]... did not seek to certify the question, and only now (after receiving an adverse ruling) has asked us to do so"); see also Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 *1053 (10th Cir. 1988) (noting with disfavor in denying a motion to certify that "the plaintiff did not request certification until after the district court made a decision unfavorable to her"). Even putting aside this procedural deficiency, we conclude-as is reflected herein-that there is a "clear and principled path" to resolving an unsettled legal question dispositive to this appeal, i.e., whether, under the Policy, Phillip was a "resident" of Dora's household at the time of the shooting. Cornhusker Cas. Co. v. Skaj, 786 F.3d 842, 852 (10th Cir. 2015). Accordingly, "we will not trouble our sister state court[]" by granting certification. Id.
B
We also deny the Burnses' motion to seal Volume VIII of the Appendix because we conclude that they have not "overcome a presumption ... that the public has a common-law right of access to judicial records." Eugene S. v. Horizon Blue Cross Blue Shield of N.J., 663 F.3d 1124, 1135 (10th Cir. 2011). Their ambivalent motion, which presents "no objection to the volume being submitted as an unsealed volume of the Appendix," Mot. to Seal, No. 18-8006, at *2 (10th Cir., filed June 25, 2018), does not "articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." Helm v. Kansas, 656 F.3d 1277, 1292 (10th Cir. 2011).
VI
Because we conclude that Phillip was not a "resident" of Dora's household at the time of the shooting, we REVERSE the district court's entry of summary judgment and REMAND for proceedings consistent with this order and judgment.[3] We DENY the motions to certify and to file Volume VIII of the Appendix under seal.

The court previously granted the motion to seal "provisionally," taking under advisement the "ultimate propriety of keeping the materials identified in the [m]otion sealed." Order, No. 18-8006, at *2 (10th Cir., filed June 25, 2018).

Wyoming law - as mentioned supra - requires courts to interpret ambiguous insurance policy provisions "in favor of coverage," T.M., 59 P.3d at 726, and we read that phrase as specifically instructing courts to resolve such ambiguities in favor of coverage for the individual seeking coverage in the case before them. Thus, we will choose any fair interpretation of the term "resident" that would allow Dora to receive the coverage she now seeks, regardless of whether that same interpretation would hypothetically result in coverage for other individuals, including Phillip, who are not seeking coverage in the case before us.
Our approach here is consistent with the reasoning behind the aforementioned Wyoming law requirement referred to as the "rule of strict construction against the insurer." Sonnett v. First Am. Title Ins. Co., , 804 (Wyo. 2013) (quoting Hulse v. First Am. Title Co. of Crook Cty., , 134 (Wyo. 2001)). This rule reasons that ambiguity in an insurance policy should not defeat a claim for coverage because "insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms" but where the insurance company has wide latitude to alter terms and clarify any potential ambiguities in its favor when drafting the policy. Century Sur. Co. v. Jim Hipner, LLC, , 787 (Wyo. 2016) (quoting Evans v. Farmers Ins. Exch., , 286 (Wyo. 2001)). In other words, an insurance company cannot rely on ambiguity to defeat coverage when it was exclusively empowered to clarify that ambiguity in advance, and courts should follow this principle even if it requires interpreting the same ambiguous policy term differently in different cases based solely on what would promote coverage in each case for the individual claiming it. See Vanguard Ins. Co., 568 N.W.2d at 158 (explaining, in interpreting the ambiguous term "resident" in an insurance policy, that the court would not rely on "a number of [state] precedents addressing similar insurance policy language" because those cases "concern situations in which, if the person in question was held to be a `resident' of the household of the insured[, thus qualifying them as an insured] ... coverage was afforded. Here, the opposite result obtains; if decedent was a resident of his father's household [and thus an insured], there is no coverage [for the father].").

Because we reverse the entry of summary judgment on the basis that the ambiguous term "resident" may be resolvable in favor of coverage for Dora, we do not reach the Burnses' second issue on appeal, i.e., whether the inclusion of a severability clause in the same policy as an "any insured" exclusion created an ambiguity that could give rise to coverage for Dora.